CGC ENTERPRISES, Petitioner,

v.

STATE BOARD OF TAX
COMMISSIONERS,
Respondent.

Columbus Village Apartments, Petitioner,

v.

State Board of Tax Commissioners,
Respondent.

Nos. 49T10–9610–TA–00137,
49T10–9610–TA–00138.

Tax Court of Indiana.

Aug. 6, 1999.

John R. Rumple, Sharpnack, Bigley, David & Rumple, Columbus, IN, Attorney for Petitioners.

Jeffrey A. Modisett, Attorney General of Indiana, Vincent S. Mirkov, Joel Schiff, Deputy Attorneys General, Indianapolis, Indiana, Attorneys for Respondent.

FISHER, J.

Columbus Village Apartments and CGC Enterprises (hereinafter collectively referred to as petitioners) appeal the final determinations of the State Board of Tax Commissioners (State Board) fixing the assessed value of the petitioners' property as of March 1, 1994. In this original tax appeal, the petitioners raise one issue: whether the State Board erred in using a residential pricing schedule with a row-type adjustment in assessing the petitioners' properties.

## BACKGROUND AND PROCEDURAL HISTORY

The subject improvements are apartment buildings located in Columbus, Indiana. On September 30, 1994, both petitioners filed a Form 130 Petition for Review of Assessment with the Bartholomew County Board of Review (BOR) in which the petitioners alleged that the subject improvements should have been assessed using a GCR pricing schedule rather than a residential pricing schedule with a row-type adjustment. The BOR concluded otherwise and denied the petitions. Each petitioner then filed a Form 131 Petition for Review of Assessment with the State

Board. A hearing on these petitions was held before Mr. Steven King, a State Board hearing officer, on October 16, 1995. On September 20, 1996, the State Board issued its final determinations. Each petitioner thereafter filed an original tax appeal. The parties agreed to consolidate the appeals because the factual and legal issues involved are identical. See IND. T.R. 42(A).

### Standard of Review

The State Board is afforded great deference when it acts within the scope of its authority. See *King Indus. Corp. v. State Bd. of Tax Comm'rs*, 699 N.E.2d 338, 339 (Ind. Tax Ct.1998). Accordingly, the Court will reverse a final determination made by the State Board only when that determination is unsupported by substantial evidence, is arbitrary or capricious, constitutes an abuse of discretion, or exceeds statutory authority. See *id.*

### Discussion

The petitioners contend that the State Board should have used the GCR pricing schedule rather than the residential pricing schedule with a row-type adjustment (hereinafter referred to as row-type adjustment) to assess the subject improvements.[1] In support of this contention, the petitioners make two arguments. First, they argue that using the row-type adjustment to assess the subject improvements was improper because the individual dwelling units within the subject improvements could not be owned individually, which, according to the petitioners, was a necessary condition for using the row-type adjustment to assess the subject improvements. Second, they argue that the subject improvements should have been assessed by using the GCR Apartment model because the subject improvements are apartment buildings. See IND. ADMIN. CODE tit. 50, r. 2.1–4–3(a) (1992) (governing selection of pricing

---

1. In Indiana, models are used to assess improvements. The model method is a "method of computing the replacement or the reproduction cost of an improvement by applying the cost of a specified model and adjusting the cost to account for specified variations between the subject improvement and the model." IND. ADMIN CODE tit. 50, r. 2.1–6–1 (1992) (codified in present form at *id.* r. 2.2–1–37 (1996)). Because there are many commercial and industrial models, improvements are grouped into three major categories: General Commercial Mercantile (GCM) General Commercial Industrial (GCI), and General Commercial Residential (GCR). See IND. ADMIN. CODE. tit. 50, r. 2.1–4–3(a) (1992); *Barker v. State Bd. of Tax Comm'rs*, 712 N.E.2d 563, 567 & n. 8 (Ind. Tax Ct.1999).

schedules). (codified in present form at *id.* r. 2.2–10–6.1(a) (1996)). Both arguments will be addressed in turn.

The regulation governing the row-type adjustment is as follows:

This schedule applies only to row-type dwellings, defined as multi-family (two or more families) dwellings in which the individual dwelling units are separated vertically by means of 'common' or 'party' walls. Row[-]type dwellings are different from duplexes in which the individual dwelling units are separated horizontally. This category includes any row-type configuration with two or more family units, townhouses, and semi-detached condominium units.

Row–Type dwelling units, because they can be owned individually, shall be priced uniformly as individual dwelling units regardless of whether they are owned individually or in combination. Schedule B is used to adjust the base price to account for the variation in cost of erecting row-type units as compared to free standing single family units.

*Id.*

The petitioners rely on the "can be owned individually" language of the regulation to support their position that the ability to own the individual dwelling units within the subject improvements individually is a necessary condition for using the row-type adjustment to assess the subject improvements. Assuming arguendo that the petitioners correctly interpret the regulation, they still must demonstrate that the individual dwelling units in the subject improvements cannot be owned individually to succeed in this case.

At trial, the petitioners offered a Columbus city ordinance purporting to prove that the individual dwelling units could not be owned individually. The State Board objected on the basis that the ordinance was not offered as evidence at the administrative level. *See* IND.CODE ANN. § 33–3–5–14 (West 1996); *State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.,* 420 N.E.2d 1324, 1328 (Ind.Ct. App.1981). The petitioners responded by arguing that the ordinance constituted law that governed the case and therefore, can be properly considered by the Court.

■ Indiana Evidence Rule 201(b) allows a court to take judicial notice of law. In addition, a court may take judicial notice at *any* stage of the proceedings, including on appeal. *See* IND. R. EVID. 201(f); *Mayo v. State,* 681 N.E.2d 689, 693 (Ind.1997). Under the Indiana Rules of Evidence, law is defined as including codified ordinances of municipalities. *See* IND. R. EVID. 201(b)(4). However, before the Court may apply the Indiana Rules of Evidence in this case, several threshold questions must be resolved—not the least of which is whether the rules trump the law governing what issues and evidence this Court may consider in reviewing a State Board final determination.

■ At trial, the Court invited counsel for the petitioners to submit authority and/or argument demonstrating that the Court could consider the proffered ordinance despite the fact it was not presented to the State Board. The petitioners apparently declined the invitation as they were silent on the subject in their brief. The State Board was likewise of little help as it discussed the law that existed before the Indiana Rules of Evidence were promulgated in its brief. In the absence of any effort by the party asserting the admissibility of the ordinance, the Court declines to make the petitioner's case for it. Because the city ordinance was not offered at the administrative level, it may not be presented here. *See* IND.CODE ANN. § 33–3–5–14; *Gatling Gun Club,* 420 N.E.2d at 1328. Consequently, the State Board's objection is SUSTAINED.

■ The petitioners also offered the testimony of Mr. Milo E. Smith, a real estate tax consultant who receives compensation based on the amount that the petitioners' property tax is reduced. The Court reviews Mr. Smith's testimony in light of the contingent nature of his compensation. *See Wirth v. State Bd. of Tax Comm'rs,* 613 N.E.2d 874, 876–77 (Ind. Tax Ct.1993). In his testimony, Mr. Smith offered his opinion that the individual dwelling units in the subject improvements could not be owned individually because they did not have separate deeds. (Trial Tr. at 20). However, the mere fact

that the individual dwelling units do not have separate deeds only demonstrates that the individual dwelling units *are not* owned individually. It does not demonstrate that they *cannot* be so owned. As a result, Mr. Smith's opinion has no factual basis in the record, and Mr. Smith's unsupported opinion, standing alone, does not demonstrate error in the State Board's choice of the row-type adjustment. *See Herb v. State Bd. of Tax Comm'rs,* 656 N.E.2d 890, 893 (Ind. Tax Ct.1995) ("Allegations, unsupported by factual evidence, remain mere allegations.").

 The GCR pricing schedule includes "Apartments, commercial flats (1–3 stories)." IND. ADMIN. CODE tit. 50, r. 2.1–4–3(a). Therefore, the petitioners argue that the GCR pricing schedule rather than the residential pricing schedule with row-type adjustment should have been used to assess the subject improvements.

> [The GCR pricing schedule] includes those use-types generally associated with commercial operated residential accommodations, which are more typical of residential type construction as opposed to those which are more characteristic of commercial type construction. This schedule should only be used for structures that are one or two stories. Multiple story structures should be priced from the GCM schedule.

*Id.*

 The State Board has the discretion of choosing the model that most closely fits the physical characteristics of the subject improvement. *See Bender v. State Bd. of Tax Comm'rs,* 676 N.E.2d 1113, 1116 (Ind. Tax Ct.1997). However, the taxpayer is entitled to have his property assessed using the correct model. *See Zakutansky v. State Bd. of Tax Comm'rs,* 696 N.E.2d 494, 497 (Ind. Tax Ct.1998).

 The petitioners contend that because both subject improvements contained four or more units, and each of these units was rented out, and the petitioners did not live in any of the units, the State Board erred in using a residential schedule in assessing their property. However, "the actual use of the property is not a determinative factor in selecting the appropriate model, but merely a starting point," *Herb,* 656 N.E.2d at 893, and the model whose physical features most closely resemble the improvements being assessed is the correct model to be used regardless of the model's name. *See Zakutansky,* 696 N.E.2d at 497; *see also Herb,* 656 N.E.2d at 893. Consequently, the petitioners' argument that the subject improvements are used as apartments buildings misses the mark and does not demonstrate error in the assessments.

For the Court to overturn the final determinations of the State Board the petitioners must present probative evidence to demonstrate that the GCR apartment model is the model that most closely resembles the subject improvements with respect to the subject improvements' physical features. *See Whitley Prods., Inc. v. State Bd. of Tax Comm'rs,* 704 N.E.2d 1113, 1119 (Ind. Tax Ct.1998), *review denied.* In this case, the petitioners have failed to present probative evidence to demonstrate the physical characteristics of the subject improvements. Without probative evidence demonstrating the physical characteristics of the subject improvements, and a showing that the subject improvements at issue most closely fit the GCR apartment model, the Court cannot say that the State Board's choice of the row-type adjustment to assess the subject improvements was erroneous.

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the final determinations of the State Board.