FARLEY NEIGHBORHOOD ASSOCIA-
TION, The Laundry Connection of
Indiana, Inc., and William and Amy
Tischer, Appellants (Petitioners Be-
low),

v.

TOWN OF SPEEDWAY, Appellee
(Respondent Below).

No. 49S04–0109–CV–424.

Supreme Court of Indiana.

April 3, 2002.

Bette J. Dodd, Todd A. Richardson, Lewis & Kappes, P.C., Indianapolis, IN, Attorneys for Appellants.

Anne E. Becker, Robert M. Glennon, Daniel M. LeVay, Indiana Office of Utility Consumer Counselor, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Office of Utility Consumer Counselor.

James M. Gutting, Nicholas K. Kile, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellee.

L. Parvin Price, J. Christopher Janak, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Amici Curiae Indiana Association of Cities and Towns; Indiana Municipal Lawyers Association.

SHEPARD, Chief Justice.

The Speedway Town Council passed an ordinance to increase sewer rates nearly forty percent across the board. In accordance with a practice five decades old, it set the rate for out-of-town customers fifty percent higher than the in-town rate. Some out-of-town users objected. The trial court concluded that they failed to prove the Speedway Council abused its discretion by perpetuating the rate differential. We affirm.

## Facts and Procedural History

In 1950, several real estate developers asked Speedway to provide sewer service for projects they wished to undertake on tracts of land outside the Town's boundaries. The Town was concerned that ratepayers within its boundaries would end up paying for additional treatment and collection facilities necessitated by the demand created by the developers' activities.

The solution to this was a differential rate, and in 1954, Speedway began providing service to out-of-town property at 150 percent of the in-town rate.[1] This arrangement continued unchallenged for forty-six years. Projections about demand have proven correct: population inside the town has declined slightly while population in the newly-served areas has grown sixty percent. (R. at 413, 419.) The Town's investment in new sewer facilities over the intervening decades has largely been driven by demand from outside its boundaries. (R. at 413.)

By the year 2000, Speedway needed a system upgrade to prevent storm water run-off from causing the release of untreated sewage into Eagle Creek. A consulting firm recommended an across-the-board rate increase. On April 11, 2000, Speedway notified all its sewage works customers of a proposed forty percent increase.

---

1. Before enlarging its water treatment facility and expanding its sewer infrastructure, Speedway initially adopted an ordinance that imposed a twenty percent surcharge. (R. at 395–96.) After this work was completed but before any out-of-town customers were connected, the surcharge was raised to fifty percent. (*Id.*)

Objections came from certain out-of-town users (Petitioners), including a laundromat owner whose resulting annual sewage bill would be approximately $7,300 more than that of a comparable business in town. After the required public hearing, Speedway's Town Council adopted the recommended rates over these objections. *See* Ind.Code Ann. § 36–9–23–26(a) (West 2000).

Petitioners filed written objections as required by statute, and the matter was tried to a court. *See* Ind.Code Ann. § 36–9–23–26.1 (West 2000). Otto Krohn, CPA, testified on behalf of the Petitioners that a rate differential must be based on cost differentials; that only a formal cost-of-service study prepared by a team of accountants, lawyers and engineers may adequately justify cost differentials; and that Speedway must justify its rates by obtaining such a study.[2]

Krohn also testified that only the Town's collection system costs could justify a rate differential, because the other costs would be the same for all customers. Because these costs amounted to less than five percent of total requested revenues, Krohn concluded, "inherently the disparity of [fifty] percent appears to be unsubstantiated." (R. at 303.) He later testified that

ten percent would be "a more appropriate rate disparity." (R. at 889.)

On cross-examination, Krohn conceded that he was unsure what specific expenses comprised the collection costs figure he cited, which came from the report of Speedway's consultants. He admitted that the amount identified as collection costs likely would not include either depreciation or investment return on the portion of plant assets used to serve out-of-town customers.

Speedway countered with its own expert testimony by John Skomp, whose consulting firm recommended the rate increase. Skomp testified that the figure Krohn cited as collection system costs included only labor costs on collection lines. It did not include maintenance of lift stations or power purchased to operate them, maintenance on outside lines and facilities, depreciation, or return on capital.

To counter Krohn's testimony further, Speedway presented a "preliminary" cost-of-service analysis that Skomp prepared by following guidelines in the American Water Works Association (AWWA) Water Rates Manual.[3] This analysis showed that based on the full cost of service, out-of-town customers would pay a surcharge as high as 250 percent of in-town rates.[4] (R. at 444.)

---

2. On appeal Petitioners take this argument even further: "The only rational reading of the [municipal sewage works] statute is that the legislative body must make a finding and have a reasonable basis for imposing differing rates *at the time it adopts the ordinance.*" (Appellants' Br. at 14 (emphasis in original).) As Speedway points out, Petitioners waived any argument that information prepared after the public hearing but prior to trial should be excluded by failing to object to this information at trial. (Appellee's Br. at 36; R. at 445.)

3. Krohn testified that water rates methodology is inappropriate when evaluating sewer rates, (R. at 860–61, 887), but Skomp countered that the manual has "generally been

adopted, also, for doing sewer rates . . . sewer cost of service studies," and that he had often used it in sewer applications. (R. at 421.)

4. Petitioners challenged the inclusion of a charge for return on plant that may have been either contributed or funded by revenue bonds for which the utility users had already paid. (Appellants' Br. at 24.) However, they have cited no authority for the proposition that a municipality that is not subject to Indiana Utility Regulatory Commission rules must exclude such charges in setting rates. In any event, Krohn conceded that even without return on plant taken into account, Skomp's analysis would still indicate a 100 percent rate differential. (R. at 894.)

Krohn asserted that some costs were double-counted in the analysis, so as to charge out-of-town customers twice for these costs. Skomp had explained otherwise in earlier testimony. The experts also disagreed over whether certain components of the in-town system charged to out-of-town customers in Skomp's analysis actually benefited customers outside town.

Both experts were CPAs with extensive public utility experience. Each attacked the other's methodology in further testimony. At the end of cross-examination, Krohn conceded that he did not challenge Skomp's competence or credentials, only his approach.

After hearing all the evidence, the trial court made findings of fact, including that:

- Speedway adopted its revised rate schedule based on the recommendation of an outside expert consultant.
- All lift stations are out of town, so related maintenance and operations costs are fully attributable to out-of-town customers.
- Nearly all out-of-town customers are on the opposite side of I–465 and Eagle Creek from Speedway, requiring special sewer lines with increased maintenance costs and risks to serve the out-of-towners.
- It is reasonable to charge out-of-town customers for out-of-town operations, maintenance, depreciation, and return on invested capital.
- According to the AWWA Rates Manual, which offers a reasonable methodology for setting municipal sewer rates, the fifty percent surcharge is a reasonable rate design.[5]

The trial court concluded:

It is Petitioners' burden to show that discretion was abused. This burden is not carried merely by claiming that there are different rates within town and out of town. It is not carried merely by challenging the methodology by which the rate is chosen. Instead, it is petitioner's burden to demonstrate that the rate differential is not justified by variations in costs, including capital, of furnishing services to various locations.

(R. at 165 (citations omitted).) The court found the proposed rates just and equitable and upheld the ordinance.

The Court of Appeals reversed, shifting the ultimate burden to Speedway to prove that the surcharge was reasonably related to increased costs of service and concluding that the fifty percent differential was "arbitrary, inequitable, and discriminatory." *Farley Neighborhood Ass'n v. Town of Speedway,* 747 N.E.2d 1132, 1145 (Ind. Ct.App.2001). We granted transfer. 761 N.E.2d 418 (Ind.2001).

### Standard of Review

▮▮▮ "[R]ate-making is a legislative, not a judicial function." *Pub. Serv. Comm'n v. City of Indianapolis,* 235 Ind. 70, 81, 131 N.E.2d 308, 312 (1956). The trial court may not substitute its own judgment for the municipality's discretionary authority; it may only determine whether the municipality is acting within its statutory authority. *See id.*

▮▮▮ On appeal, we will not set aside a trial court's findings and conclusions unless they are clearly erroneous. Ind. Trial Rule 52(A). We disturb a judgment only when there is no evidence to support the findings or the findings do not support the judgment. *Chidester v. City of Hobart,* 631 N.E.2d 908 (Ind.1994). We do not reweigh evidence, and we consider only evidence most favorable to the trial court

---

**5.** Each of these findings is supported by testimony in the record. (*See,* respectively, R. at 277, 295, 297; 435–37, 414; 435–37; 439; 421, 445.)

judgment and all reasonable inferences arising from that evidence. *Id.* (citations omitted).

### The Statutory Framework

Indiana Code chapter 36–9–23 covers municipal sewage works. Indiana Code Ann. § 36–9–23–25(a) (West 2000) requires municipal legislative bodies to establish just and equitable fees for sewage works services.

Indiana Code Ann. § 36–9–23–25(b) (West 2000) defines "just and equitable fees" as those needed "to maintain the sewage works in the sound physical and financial condition necessary to render adequate and efficient service." Fees must be sufficient to cover all expenses incidental to operation and to provide a sinking fund, adequate working capital, and adequate funds for improvements and replacements. *Id.* Section 25(b) goes on to say: "Fees established after notice and hearing under this chapter are presumed to be just and equitable."

Indiana Code Ann. § 36–9–23–25(e) (West 2000) provides municipalities "reasonable discretion in adopting different schedules of fees, or making classifications in schedules of fees, based on variations in (1) the costs, including capital expenditures, of furnishing services to various classes of users or to various locations; or (2) the number of users in various locations."

Property owners served by sewage works may object to proposed rate changes and challenge the rates in court. Indiana Code chapter 34–13–6 governs appeals from actions of municipalities. Indiana Code Ann. § 34–13–6–4(a) (West 2000) says in relevant part: "The decision appealed from is considered prima facie correct and *the burden of proof in all appeals is on the party appealing.*" (Emphasis added.)

### An Unmet Burden

■ These statutes we have just summarized confirm that the trial court correctly placed the burden on Petitioners to prove that Speedway's proposed rate structure was not reasonably related to either costs or the number of users. Presentation of a prima facie case does not suffice.

■ Petitioners' argument that municipalities must justify even across-the-board rate increases in advance via full-scale, multi-disciplinary cost studies ignores the presumptions and burdens provided by statute. Furthermore, this requirement would allow a single protester to force a municipality to incur such expense. This scenario is distinctly at odds with the statute granting municipalities reasonable discretion, rather than requiring absolute precision, in differential rate-setting.

■ The question on appeal, then, is whether evidence supports the trial court's conclusion that Petitioners failed to meet their burden. *Chidester,* 631 N.E.2d at 910. Petitioners presented expert testimony that only collection system costs should be chargeable exclusively to out-of-town customers, and that such costs supported a differential of only about ten percent.

Speedway refuted this testimony with credible evidence that Petitioners' calculation included only one category of collection system costs, i.e., labor. Speedway offered further rebuttal in the form of a more detailed calculation supporting a surcharge as great as 250 percent.

In short, the testimony at trial amounted to a battle of the experts. Petitioners offered only minimal evidence that Speedway's rate differential was unrelated to costs, and Speedway effectively refuted

Petitioners' proffered calculation.[6]

We therefore agree that Petitioners did not carry their burden of proving that Speedway abused its discretion when, with advice from an outside expert with twenty years' experience in utility ratemaking, it continued a fifty percent surcharge adopted when the town first agreed to provide out-of-town service nearly half a century ago.[7]

### Due Process Challenge

■ Petitioners claim that requiring citizens to bear the burden of presenting a cost-of-service study to rebut a municipality's rate structure at a town council hearing, with only ten days' prior notice, deprives them of their due process rights under both the United States and Indiana Constitutions. (Appellants' Br. at 19–21.)

This mischaracterizes the task Petitioners faced. First, Speedway did not argue (and we do not hold) that Petitioners could carry their burden only by presenting such a comprehensive study. Second, Petitioners misstate the sequence of events that occurs when a municipality revises sewer rates.

As noted above, a municipal legislative body must hold a public hearing before revising sewer rates. Ind.Code Ann. § 36–9–23–26(a) (West 2000). After the hearing, it adopts the rates as originally proposed or as modified. Id. at § 36–9–23–26(b). Petitioners who attended the public hearing may then file a written petition stating their grounds of objection, which triggers a trial court proceeding. Ind.Code Ann. § 36–9–23–26.1 (West 2000). The rate increase is held in abeyance pending the trial court decision. Id.

Speedway does not argue that the grounds in the written petition are limited to concerns expressed at the public hearing. Petitioners' argument that the brief window of time between the notice of a rate change and the public hearing denied them due process is therefore without merit.[8]

■ Petitioners also complain that they did not receive Skomp's preliminary cost-of-service analysis until 8:30 p.m. the night before trial. (Appellants' Br. at 7; R. at 459.) They did not object to admission of the analysis or request a continuance, however, so any claim of unfair surprise is waived.[9] See Brattain v. Herron, 159 Ind. App. 663, 309 N.E.2d 150 (1974).

6. The trial court also reasonably took into account the fact that the fifty percent differential was established as part of the original agreement to connect out-of-town customers, and has been maintained without objection ever since. (R. at 166.)

7. Neither have Petitioners proven that Speedway's rate increase violates Indiana's Home Rule Act, Ind.Code Ann. § 36–1–3–8(a)(6) (West 2000), which withholds from municipalities "[t]he power to impose a service charge or user fee greater than that reasonably related to reasonable and just rates and charges for services."

8. Petitioners cite Foltz v. City of Indianapolis, 234 Ind. 656, 130 N.E.2d 650 (1955), for the proposition that placing the burden on them to present a cost-of-service study to challenge the proposed rate structure is a denial of due process. Again, they are assuming a requirement that is not established. Furthermore, nothing in Foltz, which involved the condemnation of private property to create additional off-street parking, supports the argument that due process requires placing the burden on municipalities to prove sewage rates reasonable. See id.

9. Petitioners also present arguments about the bond they posted against a potential award of costs and damages arising from their rate challenge. See Ind.Code Ann. § 36–9–23–26.1(c) (West 2000). Speedway has withdrawn its objections to release of the bond. (Appellee's Br. at 44; Supp. R. at 4–5.) Petitioners' challenge to the bond requirement is therefore moot and we do not address its merits.

## Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.