**CITY OF INDIANAPOLIS,**
**Appellant–Plaintiff,**

v.

**Cary CAMPBELL, and the Cary**
**Campbell Realty Alliance, Inc.,**
**Appellees–Defendants.**

**No. 49A02–0208–CV–704.**

Court of Appeals of Indiana.

Aug. 5, 2003.

Jeffrey S. McQuary, Office of Corporation Counsel, Indianapolis, IN, Attorney for Appellant.

Brenda Franklin Rodeheffer, Monday Rodeheffer Jones & Albright, Indianapolis, IN, Attorney for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

The City of Indianapolis ("the City") appeals the trial court's order declaring that for the purposes of Section 361–504 of the Revised Code of the Consolidated City of Indianapolis and Marion County ("the Code"), which forbids placing handbills on certain premises, the Renter's Gazette published and distributed by Cary Campbell and Cary Campbell Realty Alliance, Inc. ("Realty") is a "newspaper" and, therefore, not subject to the prohibition.

We affirm.

*ISSUE*

Whether the trial court erred in holding that the Code did not forbid distribution of the Renter's Gazette, as modified and

published in 2002, to apartments in the City.

## FACTS

In 1975, the City enacted provisions of the Code that ban the distribution of handbills upon premises under certain circumstances, but the Code expressly excepted newspapers from this prohibition. Realty is an Indiana corporation that "sell[s] real estate to first time home buyers." (Tr. 361). Realty markets its services to apartment renters. Realty utilized independent contractors to distribute material to individual apartments in various apartment complexes in the City.

On June 29, 2000, the City filed a complaint[1] that alleged Realty had placed handbills upon the premises of various apartment complexes in violation of § 361–504 of the Code and sought an injunction. Realty counterclaimed that the relevant Code provisions violated its free speech rights by "impos[ing] restrictions on commercial speech that are not imposed on . . . newspapers" and was an impermissible "content-based regulation on [Realty's] commercial speech."[2] At the hearing on the City's complaint, witnesses representing the management of several apartment complexes testified that Realty's advertising material had been distributed to the apartments therein despite the presence of signs barring any solicitation on the premises. Copies of the material distributed by Realty were admitted into evidence. On February 21, 2001, the trial court enjoined Realty

from placing handbills upon any premises in the City after being requested by a

person thereon not to do so and/or when there is placed on the premises in a conspicuous position near an entrance thereof a sign posted "No handbills" or "No soliciting."

(App. 23).

After this order, Realty filed a Certificate of Assumed Business Name with the Marion County Recorders Office, stating that Realty would be doing business as Renter's Gazette.[3] Realty began publishing the Renter's Gazette on a monthly basis.

Subsequent to the trial court's February 2001 order, the City filed petitions for contempt, alleging that the distribution of the Renter's Gazette violated the trial court's injunction. And Realty filed a motion to dissolve the injunction. The trial court again heard evidence. It noted that the non-advertising contents of the Renter's Gazette sometimes stayed the same from month to month and that the dictionary defined a newspaper as a paper printed at least "weekly" with "news, articles of opinions, features, and advertising." (App. 29). On September 21, 2001, the trial court denied Realty's motion to dissolve the injunction, found that the Renter's Gazette was not a newspaper, and held Realty in contempt of the injunction.

After this order, Realty again modified the Renter's Gazette. Specifically responding to the September 2001 order, it added content concerning the political process and matters of interest to renters and began issuing the Renter's Gazette on a weekly basis. It also added a masthead

---

1. The City did not initially provide us with the complaint in the Appendix filed, but complied with our subsequent order to do so.

2. As this and other pleadings were not in the City's Appendix but supplied upon subsequent

order of this court, they cannot be cited by a page number.

3. Realty also filed a certificate to the same effect with the recorder's offices in four other central Indiana counties.

indicating the volume number and the date of publication.

On November 5, 2001, Realty filed an amended counterclaim for declaratory judgment seeking the court's "determination that the Renter's Gazette, as modified, is a newspaper and therefore not subject to enforcement under Section 361–504 of the Code." (App. 32–33). At the May 13, 2002 hearing on Realty's counterclaim, Campbell testified that the Renter's Gazette was being published weekly and being distributed in five central Indiana counties. The trial court admitted copies of 26 issues of the Renter's Gazette, "A Weekly Newspaper for Renters." (Exs. H–GG).

In its July 2, 2002 ruling, the trial court considered the following provisions in Chapter 361, the "Litter" chapter, of the Code. First, it looked at the prohibition, § 361–504, which states:

> No person shall place any handbill upon any premises if requested by anyone thereon not to do so or if there is placed on the premises in a conspicuous position near any entrance thereof a sign bearing notice indicating in any manner that the occupants of said premises do not desire to have such handbills left upon said premises.

Next, the trial court noted that § 361–102(e), which defines "handbill," expressly excepts a "newspaper" from the "handbill" definition by stating that "handbill shall not include a newspaper." It further considered § 361–507, which states that the handbill distribution restrictions "shall not be deemed to apply . . . to the distribution of newspapers." Finally, the trial court referred to the definition of "newspaper" in Chapter 361:

> Newspaper shall mean and include any newspaper of general circulation, as defined by general law, any newspaper duly entered with the United States

Postal Services in accordance with federal statute or regulation, and any newspaper filed and recorded with any recording officer, as provided by general law; and in addition thereto, shall mean and include any periodical or current magazine regularly published with not less than four (4) issues per year and sold or distributed to the public.

§ 361–102(i).

The trial court noted the "four (4) page, folded format" of the modified Renter's Gazette, and the uncontroverted evidence that it was being "published and distributed on a weekly basis." (App. 33, 37). The trial court also noted that it

> contain[ed] information about housing discrimination, voter registration, candidates for the office of Marion County Sheriff, the Indiana State government budget, fire-protection systems, renter's insurance, the Indiana Public School system, and central Indiana Congresspersons and Indiana Senators.

(App. 37). The trial court then concluded that "the unchallenged evidence" demonstrated that the Renter's Gazette "as modified, since the Court's September 21, 2001, Order" was a "newspaper" under § 361–102(i) and under "general law" based upon the frequency of its publication and its content. (App. 37). Because the trial court found that the Renter's Gazette, "as modified" was a newspaper, it held that the Renter's Gazette was not subject to the "handbilling restrictions" of the Code and that Realty was "entitled to declaratory relief." (App. 38).

## DECISION

■ As noted above, the issue was whether the Renter's Gazette, as modified, was a newspaper under the applicable provisions of the Code. Both parties submit that because our consideration thereof necessarily entails the interpretation of the

ordinance, which is a question of law, a *de novo* standard of review applies. However, although the construction of the term "newspaper" as used in the ordinance is a question of law for the court to determine, whether a particular publication comes within the court's construction of the term "newspaper" is a question of fact. *Emmis Publ'g Corp. v. Indiana Dep't of State Revenue,* 612 N.E.2d 614, 623 (Ind. Tax Ct.1993).

 When we construe an ordinance, we apply the rules applicable to statutory construction. *Id.* The primary rule of statutory construction is to ascertain and give effect to the intent of the statute's drafters. *Hendrix v. State,* 759 N.E.2d 1045, 1047 (Ind.2001). The best evidence of that intent is the language of the statute, and all words must be given their plain and ordinary meaning unless otherwise indicated by the statute. *Id.*

The City first argues that the trial court erred when it held that the Renter's Gazette was a newspaper under the language of the ordinance because in so doing, it "overlooked" the "additional, more specific, definition" of "commercial handbill." City's Br. at 9. It cites the "Definitions" section of the ordinance, providing as follows:

> Commercial handbill shall mean and include any handbill which ... (4) while containing reading or pictorial matter other than advertising matter is predominantly and essentially an advertisement and is distributed or circulated for advertising purposes, or for the private benefit and gain of any person so engaged as advertiser or distributor.

Code Sec. 361–102(b). Indeed, Section 361 contains a "commercial handbill" definition

as well as a definition of both "handbill"[4] and "newspaper." However, only one provision in the balance of the ordinance refers to the distribution of a "commercial handbill"—to ban the distribution or sale of "any commercial handbill in any public place." Code Sec. 361–501. There was no allegation or evidence that the Renter's Gazette had been distributed or sold in a public place. Therefore, when considering the question of whether the ordinance forbade the distribution of the Renter's Gazette on private property, we do not find that the language of the ordinance expresses the intent that the Renter's Gazette should be reviewed not only as to whether it was a handbill or a newspaper but also whether it was a commercial handbill.

 On reply, the City argues that "commercial handbill" is a "subset of all handbills" and all references to "handbills" in the ordinance necessarily include commercial handbills. Reply at 2. However, the ordinance expressly provides separate definitions for "commercial handbill" and "handbill" and then proceeds to proscribe the distribution of handbills in five instances and of commercial handbills in one instance. Therefore, we conclude that reference to the definition of a commercial handbill is only necessary when the challenged distribution is in a public place.

Next, the City claims that the trial court erred when it determined that the Renter's Gazette was a newspaper under the ordinance because "advertisers [may not] evade regulations about solicitation by appending 'news' to their advertisements." City's Br. at 10. The City cites *Kenro,*

---

4. "Handbill" is defined as "any printed or written matter, any sample or device, circular, leaflet, pamphlet, paper, booklet, or any other printed matter or literature which is not delivered by United States mail, except that handbill shall not include a newspaper." Code Sec. 361–102(e).

*Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162 (S.D.Ind.1997), for this proposition.

In *Kenro,* Fax Daily claimed that the Telephone Consumer Protection Act's ban on unsolicited fax advertisements violated its commercial speech rights under the First Amendment. We fail to see how the federal district court's *Kenro* holding that the Act did not violate the sender's commercial speech rights would apply to render erroneous the trial court's interpretation and application of the City's ordinance in this case.

Moreover, the City urges us to apply *Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942),[5] on which *Kenro* relied and holding that "commercial" literature could be completely banned by a city. Half a century later, however, the United States Supreme Court noted how its *Valentine* conclusion "that the distribution of a commercial handbill was unprotected by the First Amendment" had been superseded by the law's subsequent recognition that the "commercial attributes of various forms of communication" did not serve to moderate "their entitlement to constitutional protection." *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 420, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). Thus, "even speech that does no more than propose a commercial transaction is protected by the First Amendment." *Id.* The City's argument that *Valentine* requires us to reverse the trial court must also fail.

The City next argues that the trial court's order improperly considered First Amendment law because "First Amendment considerations do not apply to a trespass on private property." City's Br. at

13. Exactly how this contention applies to a declaratory judgment action in which the trial court was asked to determine whether the Renter's Gazette was a newspaper is unclear. Nevertheless, the argument is unavailing in light of the fact that it is the City's own ordinance that provides that a private property owner's "No soliciting" signs are of no effect when the material being distributed is a newspaper.

Finding the City's specific appellate arguments unpersuasive, we turn to the ordinance and the application thereof to the facts presented. The Code provides as follows:

> Newspaper shall mean and include any newspaper of general circulation, as defined by general law, any newspaper duly entered with the United States Postal Services in accordance with federal statute or regulation, and any newspaper filed and recorded with any recording officer, as provided by general law; and in addition thereto, shall mean and include any periodical or current magazine regularly published with not less than four (4) issues per year and sold or distributed to the public.

§ 361–102(i).

When the definition discusses one possible variety of what is to be considered a newspaper, it specifically mentions a minimum publication of four issues annually. The undisputed evidence is that the Renter's Gazette was being published much more frequently—weekly. Therefore, this part of the definition appears to have been met.

According to BLACK'S, "newspaper" is defined as "[a] publication for general circu-

---

**5.** The City indicates that *Valentine* was *"ovrl'd on other grounds by Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)."* City's Br. at 11. The "other

grounds" signal is misleading, inasmuch as what *Virginia State Bd.* held was that "commercial speech, like other varieties, is protected" by the First Amendment. 425 U.S. at 770, 96 S.Ct. 1817.

lation, usu. in sheet form, appearing at regular intervals, usu. daily or weekly, and containing matters of general public interest, such as current events." BLACK'S LAW DICTIONARY 1064 (7th ed. 1999). The Code's definition also refers to a "newspaper of general circulation," which BLACK'S defines as "a newspaper that contains news and information of interest to the general public...." BLACK'S at 1064. The trial court cited a general dictionary definition of "newspaper," to wit: "a paper that is printed and distributed usually daily or weekly and that contains news, articles of opinions, features, and advertising." (App. 36–37). We find it inarguable that the Renter's Gazette meets these definitions, as it does contain information of general public interest, including news, articles of opinions, features, and advertising.

However, we are also mindful that governmental restrictions on the exercise of First Amendment rights based on the "content" of that expression are impermissible. *See e.g. Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 100, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). Thus, the trial court properly turned to the reasoning of *Emmis*, which noted that "[p]ublications printed less frequently than weekly [were] generally not considered newspapers," and found "the foremost content-neutral factor evident in the consideration of whether a publication is a newspaper" to be "the frequency of publication." (App. 37, citing *Emmis*, 612 N.E.2d at 625). It may be noted that merely because a publication occurs weekly or more frequently does not assure its content neutrality, but is a factor to be considered in the determination. This "content-neutral factor" of the frequency of its publication—specifically, that it is published weekly—supports the conclusion that the Renter's Gazette is indeed a newspaper.

We find that the ordinance here was properly construed by the trial court, and we affirm its factual finding that the Renter's Gazette, as modified, is a newspaper as defined by the ordinance.

Affirmed.

SULLIVAN, J., and BAKER, J., concur.