The **BOARD OF DIRECTORS OF The BASS LAKE CONSERVANCY DISTRICT**, Appellant–Defendant,

v.

John **BREWER** and Susan Brewer, Appellees–Plaintiffs.

No. 75A05–0312–CV–653.

Court of Appeals of Indiana.

Dec. 7, 2004.

---

Patrick Lyp, Blachley, Tabor, Bozik & Hartman, Valparaiso, IN, for Appellant.

Martin R. Lucas, North Judson, IN, for Appellees.

## OPINION

BAKER, Judge.

Appellant-defendant, The Board of Directors of the Bass Lake Conservancy District (Bass Lake Board), appeals the trial court's grant of summary judgment in favor of appellees-plaintiffs Susan and John Brewer (the Brewers). Specifically, the Bass Lake Board argues that the trial court erred in determining that it had acted arbitrarily, capriciously and contrary to law in categorizing the Brewers' residence as a duplex or multiplex under the applicable sewer rate ordinance. Concluding that the trial court did not abuse its discretion in determining that the Bass Lake Board's actions were arbitrary, capricious and contrary to law in these circumstances, we affirm the grant of summary judgment for the Brewers.

### FACTS [1]

The Brewers constructed a house pursuant to their own specifications on Bass

1. We heard oral argument in this case on September 14, 2004 in Indianapolis. We

Lake in Starke County. The residence is a contemporary two-story structure with a view of the lake and a deck that is accessible from the second floor. There is also an outside stairway that leads up from the beach. The lower level of the residence includes a number of conveniences for "elderly family members who may find it difficult or dangerous to climb the stairs." Appellant's App. p. 122. As counsel for both parties acknowledged at oral argument, the area where the Brewer house is located is zoned for single-family residences only.

The house is equipped with two kitchens; one on the first floor, and the other on the second. Washers and dryers are also available on both floors. The home is served by a single climate control system, electrical service and one communications system that is wired throughout the residence. There is also a single sewer/water system that services the household. The first and second floors are connected by a typical stairway that is equipped with an unlocked louvered wooden door. There are no permanent walls or partitions in place that divide the upper level from the lower. Moreover, the residence has only one address: 5417 Riviera Court, Knox, Indiana.

The Bass Lake Board is a governmental entity created in accordance with Indiana Code section § 14–33–1 *et seq.* There is no dispute that the Brewers' property is located within the district and is subject to the Bass Lake Board's jurisdiction. Among the conservancy district's powers is the authority to collect, treat, and dispose of sewage. I.C. § 14–33–1–1. Such a district may establish "just and equitable charges" with respect to waste collection, treatment and disposal. I.C § 14–33–5–21. Additionally, the ordinance at issue here provides that charges should be made "for each user class, as defined, in order that the sewage works shall recover, from each user and user class, revenue which is proportional to its use of the treatment works in terms of volume and load." Appellant's App. p. 14.

The Bass Lake Board deemed the Brewers' residence a "duplex" under the sewer rate ordinance. In accordance with the ordinance, each unit in a duplex is billed at a rate of $43.26 per month—or a total of $86.52—while a single family residence is billed at a monthly rate of $57.66. The Brewers objected, and they filed a request for an appeal hearing on August 27, 2002. At this hearing, the Brewers argued that because the ordinance did not contain a definition of the term "duplex," the ordinary meaning of that word should control for purposes of charging sewer rates. In particular, the Brewers maintained that the usual meaning of the term "duplex" requires the existence of a structural separation of two fully-equipped units. Appellant's App. p. 115. Thus, the Brewers maintained that the Bass Lake Board's decision was "arbitrary, capricious, and unsupported by any evidence, [and it was not] supported by any legal authority." Appellant's App. p. 64.

As the Bass Lake Board ultimately rejected the Brewers' arguments, the Brewers paid the amount under protest that the owner of a duplex would owe. The Brewers then filed a petition for judicial review on October 14, 2002. They received a letter from the Starke County Planning Commission dated October 17, 2002, indicating that the county zoning authority had reviewed copies of the Bass Lake Board's August meeting and believed that the residence "is considered a duplex or a two (2) family dwelling." Thus, the Brew-

commend counsel for their able presentations.

ers were afforded seven days in which to apply for zoning approval of a duplex.

On December 11, 2002, the Bass Lake Board amended its ordinance regarding the sewer rates. It indicated that, in light of the Brewer's petition for judicial review, there was a need "to articulate, as an amendment to the Sewer Rate Ordinance, a definition of the word duplex." Appellant's App. p. 116. However, no definition of the word "duplex" was listed in the Ordinance. Rather, the term "duplex" was stricken and replaced with the term "multiplex." The definition set forth in the revised ordinance provided as follows:

> Multi-plex—any residential structure that contains more than one living area. The determination as to the existence of more than one living area shall be based upon the existence of separate cooking facilities. The Board may also consider the existence of separate areas for the washing of clothes and separate entrances, but the existence or nonexistence of such shall not be outcome determinative. The Property Owner of a multiplex shall pay .75 ESFDU[2] per living area, plus other applicable charges.

Appellant's App. p. 138.

Both parties moved for summary judgment. The Bass Lake Board argued that it was entitled to judgment as a matter of law because the Brewers' home was divided into two separate and distinct living areas on each level. For that reason, the Bass Lake Board reasoned that the Brewers should pay the sewer rate applicable to multiplexes under the ordinance.

On the other hand, the Brewers alleged that they were entitled to summary judgment because the undisputed evidence demonstrated that only one family used the house, "albeit an extended one that includes Susan Brewer's mother." Appellant's App. p. 117. Because the typical definition of a duplex is a "two-family dwelling," say the Brewers, their residence does not qualify as such. Appellant's App. p. 118.

Following a hearing on the motions for summary judgment, the trial court determined that the definition of the word "multiplex" in the amended ordinance and the term "duplex" as had been used by the Bass Lake Board is inconsistent with, and contrary to, the purposes of the ordinance. Appellant's App. p. 5. The trial court went on to acknowledge that "[t]he sole basis in the amended Ordinance for determining whether a structure is a duplex is whether it has separate cooking facilities." Appellant's App. p. 5. Thus, it was concluded on October 23, 2003, that "the determination of the Bass Lake Conservancy District Board pursuant to the Sewer Rate Ordinance in the District that the property of [the Brewers] is classified as a duplex or multiplex and charged the corresponding rate is reversed." Appellant's App. p. 6. The Bass Lake Board now appeals.

### DISCUSSION AND DECISION

### I. Standard of Review

We begin our discussion with the standard of review that applies to the grant or denial of summary judgment. Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. On review of a trial court's decision to grant or deny summary judgment, this court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999).

---

**2.** This is an abbreviation for "equivalent single family dwelling units."

We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.; see also* Ind. Trial Rules 56(C), (H).

A party seeking summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind.Ct.App.1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind.2002). A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Cansler v. Mills*, 765 N.E.2d 698, 701 (Ind.Ct.App. 2002), *trans. denied.*

█ In considering the circumstances here, we also note that when reviewing the provisions of an ordinance, we apply the same rules that apply to statutory construction. *City of Indianapolis v. Campbell*, 792 N.E.2d 620, 624 (Ind.Ct.App. 2003). The cardinal rule of statutory construction is to ascertain and give effect to the intent of the drafters of the statute. *Id.* When interpreting a legislative enactment, the words and phrases employed are to be given their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown. *Stewart v. City of Indianapolis*, 798 N.E.2d 863, 866 (Ind.Ct.App. 2003). In determining the plain and ordinary meaning of a term, courts may use English language dictionaries, and the relationship of words and phrases may also be considered. *Essany v. Bower*, 790 N.E.2d 148, 151 (Ind.Ct.App.2003). Finally, we note that this court reviews questions of law de novo, meaning that no deference is accorded to a trial court with regard to questions of law. *Bd. Of Comm'rs of LaPorte County v. Town & Country Utilities, Inc.*, 791 N.E.2d 249, 253 (Ind.Ct.App.2003), *trans. denied.*

## II. The Bass Lake Board's Contentions

The Bass Lake Board argues that the trial court's judgment may not stand because the evidence clearly established that the Brewers owned a "multiplex" within the meaning of the ordinance. Thus, the Bass Lake Board contends that the decision to charge the Brewers an increased sewer rate under the ordinance was reasonable, and the trial court's determination that the Bass Lake Board's imposition of a multiplex sewer rate under the ordinance was arbitrary, capricious, and contrary to law, was erroneous.

█ Turning to the considerations before us, we first acknowledge our supreme court's opinion in *Farley Neighborhood Ass'n v. Town of Speedway*, where it was established that "rate-making is a legislative, not a judicial function." 765 N.E.2d 1226, 1229 (Ind.2002). We also recognize the rule that a trial court may not substitute its own judgment for the municipality's discretionary authority. That is, the trial court should only determine whether the municipality is acting pursuant to statutory authority. *See id.*

■ In *Farley,* it was observed that Indiana Code chapter 36–9–23 governs municipal sewage works issues. *Id.* at 1230. Pursuant to that chapter, property owners served by sewage works are permitted to object to proposed rate changes and challenge the rates in court. *Id.* Also, when a sewer rate is challenged, "[t]he decision appealed from is considered prima facie correct and the burden of proof in all appeals is on the party appealing." *Id.* (quoting I.C. § 34–13–6–4(a)). While we recognize that the precise language quoted above regarding the burden of proof is not specifically set forth in the statutes that govern the Bass Lake Conservancy District's powers, the burden of proof routinely rests upon the appealing party from an order or judgment of a government agency. Thus, the same rule should apply in these circumstances, and the burden rested with the Brewers to challenge the propriety of the Bass Lake Board's decision.

In *Farley,* customers of the town's municipal sewer system challenged a proposed rate increase. Sometime in 2000, it was determined that Speedway required a system upgrade to prevent storm water run-off from causing the release of untreated sewage into the Eagle Creek reservoir. As a result, a consulting firm retained by the town recommended an across-the-board rate increase. Thus, on April 11, 2000, Speedway notified all of its sewage works customers—both in town and out-of-town residents—of the proposed forty percent increase. *Id.* at 1227. Over objections from the petitioners, who were out-of-town users, the Speedway Town Council adopted the recommended rates.

When the case reached the trial court, Speedway presented expert testimony from a representative of the firm who had recommended the increase. Based upon his years of experience, the expert con-cluded that the proposed charges were reasonable. In the end, the trial court agreed, and observed that the petitioners failed to carry their burden to show that the town council had abused its discretion in enacting the rate increases. The trial court observed that the out-of-town residents simply alleged that there were different rates for in town and out-of-town residents, and that they had merely challenged the methodology by which the rate was chosen. In the end, the trial court's order noted that the petitioners failed to meet their burden of demonstrating "that the rate differential is not justified by variations in costs, including capital, of furnishing services to various locations." *Id.* at 1229.

On appeal, this court reversed, holding that the hefty rate increase was "arbitrary, inequitable, and discriminatory." *Farley Neighborhood Ass'n v. Town of Speedway,* 747 N.E.2d 1132, 1145 (Ind.Ct.App.2001). However, our supreme court subsequently granted transfer, and determined that the ultimate burden had been shifted to Speedway "to prove that the surcharge was reasonably related to increased costs of service." Thus, the increased rates were upheld. The *Farley* court noted:

> [The] petitioners presented expert testimony that only collection system costs should be chargeable exclusively to out-of-town customers, and that such costs supported a differential of only about ten percent.
>
> Speedway refuted this testimony with credible evidence that Petitioner's calculation included only one category of collection system costs, i.e., labor. Speedway offered further rebuttal in the form of a more detailed calculation supporting a surcharge as great as 250 percent.
>
> In short, the testimony at trial amounted to a battle of the experts. *Petitioners offered only minimal evi-*

*dence that Speedway's rate differential was unrelated to costs, and Speedway effectively refuted Petitioners' calculation.*

*We therefore agree that Petitioners did not carry their burden of proving that Speedway abused its discretion, when, with advice from an outside expert with twenty years' experience in utility ratemaking, it continued a fifty percent surcharge adopted when the town first agreed to provide out-of-town service nearly half a century ago.*

*Id.* at 1230–31 (emphasis added).

Here, in support of its argument that charging the Brewers a duplex or multiplex rate was reasonable, the Bass Lake Board directs us to the testimony of several witnesses who opined that the structure was properly designated and billed as a duplex. For instance, an affidavits submitted by Tom Kruse, the inspector for the conservancy district, provided in part that:

It is my understanding based upon direction for the Board of Directors of the Bass Lake conservancy district since I began my job as District Inspector, that a 'duplex' is any residential structure that has two separate living areas. In making this determination, I was instructed to inspect whether there were separate cooking facilities. In addition, while inspecting the property I would also look for separate washer/dryer facilities and separate entrances.

Appellant's App. p. 77. Similarly, the Bass Lake Board points out that Patti Bush, a member of the board of directors of the conservancy district, testified that based upon her observations of the Brewers' residence—as well as her understanding of the word "duplex"—that the Brewers' house was, in fact, a duplex or multiplex under the ordinance. Appellant's App. p. 79–80. Further, an affidavit presented by

Cinndi Carey, the administrative assistant for the conservancy district, alleged that she had billed approximately ten owners for duplexes. Those residences contained more than one living area and had separate cooking facilities. Appellant's App. p. 81.

In addition to the above, the Bass Lake Board points out in its appellate brief that the uncontradicted evidence established that the Brewers' residence had separate kitchens, laundry facilities, bathrooms, bedrooms, living rooms and entrances. Therefore, says the Bass Lake Board, the trial court could not have reasonably concluded that it acted arbitrarily with respect to charging the multiplex sewer rate to the Brewers. Additionally, the Bass Lake Board asserts that the amendment to the ordinance substituting the word "multiplex" for "duplex," essentially codified what had always been its policy, and that it was authorized to do so.

▪ Notwithstanding the contentions advanced by the Bass Lake Board, we note that the ordinance at issue fails to define the term "duplex" or "multiplex." Moreover, we have found no Indiana case specifically defining either of these terms. Therefore, we may utilize the definitions of those terms as set out in English language dictionaries, and we may also consider the context in which the terms are used. *See Essany,* 790 N.E.2d at 151. One such definition of a duplex is as follows: a "twofold; double; a house divided into two living units." *American Heritage Dictionary,* p. 264 (3rd ed.1994). From this definition, it is apparent that the plain and ordinary meaning of the term "duplex" is a home divided for use by two families. Additionally, although not dispositive of the issue here, the following language set forth in *CGC Enters. v. State Bd. Of Tax Comm'rs,* also offers some guidance:

This schedule applies only to row-type dwellings, defined as multi-family (two or more families) dwellings in which the individual dwelling units are separated vertically by means of 'common' or 'party' walls. Row-type dwellings are different from duplexes in which the individual dwelling units are separated horizontally. This category includes any row-type configuration with two or more family units, townhouses, and semi-detached condominium units.

714 N.E.2d 801, 803 (Ind.Tax 1999).

Additionally, in the context of a dispute where a land contract seller alleged that the contract purchaser had breached the agreement by making unauthorized modifications to the property, this court made the following comments with regard to the breach:

> The real estate contract also provided that Nelson was not to make any alterations to the real estate without the Gurleys' approval. While occupying the house, Nelson made several changes including replacing the cyclone fence with a wooden fence; removing the bathtub and installing a shower; and constructing a wall which effectively turned the house into a two-family duplex.

*Nelson v. Gurley*, 673 N.E.2d 497, 499 (Ind.Ct.App.1996).

■ In our view, the Brewers' house is not divided so as to render the residence a duplex within the ordinary meaning of the term, inasmuch as the upper and lower floors are connected by a conventional stairway equipped with an unlocked wooden louvered door between them. Appellant's App. p. 123. Moreover, both parties acknowledge that the upper and lower floors of the house were connected in the same fashion as one would find in any single-family dwelling. To us, the fact that the upper and lower floors of the Brewers' residence are connected is critical. Also, as noted in the *FACTS*, the evidence established that the Brewers' residence has no barriers, partitions, or divisions separating the upstairs from the downstairs. Doors connect the rooms in their residence, and it requires no citation for the proposition that walls and permanent dividers typically separate duplex units. Again, the undisputed evidence demonstrates that the property has but one address, and the residence is served by a single communications system, a single electrical system, a single water and sewage system, and a single climate control system. Appellant's App. p. 122–23.

Be that as it may, in an effort to discount these factors, it is apparent that the Bass Lake Board merely speculates that the connection of the floor levels might someday be closed off and converted to a duplex. The Bass Lake Board further assumes that if the Brewers had removed or capped the cooking facilities from the lower living area and otherwise complied with the ordinance, the sewer rate would have been reduced to that of a single-family home.

In our view, the Bass Lake Board has erroneously relied upon the presence of duplicate household amenities to support its conclusion that the Brewers' residence is a duplex or multiplex for purposes of sewer rate charges. To be sure, there is nothing in the record to suggest that the Bass Lake Board had any basis for determining that their newly coined term "multiplex" used in the ordinance had any rational relationship to the volume of sewage that the residents in the Brewer household might generate. As made clear by the amended ordinance which references the originally-enacted version, sewer rate charges should be made "for each user class … in order that the sewage works shall recover, from each user and user class, revenue which is proportional to its

use of the treatment works in terms of volume and load." Appellant's App. p. 14. As the terms of the ordinance at issue here indicate, the apparent "litmus test" used by the Bass Lake Board—which counsel acknowledged at oral argument before this court—is the mere fact that the Brewers had a second kitchen facility in their residence.

■ That said, it is apparent that the Bass Lake Board has failed to show a reasonable basis for determining that charging the Brewers a multiplex sewer rate had any rational relationship with user volume. Additionally, inasmuch as the terms "multiplex" or "duplex" are not defined under the ordinance, the evidence presented by the Brewers shows that the residence does not qualify as either within the ordinary meaning of those terms. To be sure, it was reasonable for the trial court to recognize the residence as a single-family dwelling. The rates applied to the Brewers upon the theory that they owned a multiplex residence under the ordinance were not established by the evidence put forth by the Bass Lake Board. In addition to the existence of separate kitchen facilities, the Bass Lake Board decided that the Brewers' residence should be characterized as a multiplex or duplex under the ordinance simply because it might someday be converted to such a structure. In light of these circumstances, we must conclude that the trial court made a reasonable determination that the Bass Lake Board's classification of the Brewer residence as a duplex or multiplex was an arbitrary and capricious exercise of its power with regard to the increased sewer rate charges. Therefore, the Brewers have met their burden of proof in establishing that the Bass Lake Board's increased sewer rate as applied to them was not "just and reasonable" pursuant to Indiana Code section 14–33–5–21. As a result, we conclude that the trial court properly entered summary judgment in the Brewers' favor.

The judgment of the trial court is affirmed.

KIRSCH, C.J., concurs.

ROBB, J., dissents with opinion.

ROBB, Judge, dissents with separate opinion.

I respectfully dissent. The majority concludes that "the Bass Lake Board's classification of the Brewer residence as a duplex or multiplex was an arbitrary and capricious exercise of its power with regard to the increased sewer rate charges." Slip op. at 15. I disagree.

I begin by noting that the Brewers have not challenged the ordinance defining "duplex" or "multiplex" as a whole. They have challenged only the Bass Lake Board's application of the ordinance to them. Thus, the question is not whether the Bass Lake Board acted arbitrarily or capriciously in enacting the ordinance, but only if it acted arbitrarily or capriciously in applying the ordinance to their structure. And I reiterate, as stated by the majority, that "a trial court may not substitute its own judgment for the municipality's discretionary authority. That is, the trial court should only determine whether the municipality is acting pursuant to statutory authority." Slip op. at 8 (citing *Farley Neighborhood Ass'n v. Speedway*, 765 N.E.2d 1226, 1229 (Ind.2002)).

With that in mind, I believe that the Brewers have failed to carry their burden of proving that the Bass Lake Board's decision was in error. Bass Lake Board has apparently had for some time a standard for what constitutes a "duplex." It ultimately struck the word "duplex" in favor of the term "multiplex" and reduced the standard to an ordinance. The fact

that how the Bass Lake Board has defined a duplex or multiplex is not how the English language dictionaries or the trial court or the majority would define the term is not determinative. Nor is the fact that the area where the Brewers live is zoned only for single-family residences controlling, as the zoning and sewer rate ordinances have different purposes. Although the two ordinances may use the same term, the term can be and is defined differently in order to meet the specific purpose of each ordinance.

A duplex, and subsequently a multiplex, was defined by the rate-making authority as a residential structure with more than one living area and the existence of separate cooking facilities. As there is no question that the Brewers' residence had two separate cooking areas, it was a duplex or multiplex as defined by the ordinance, and I would hold that the Bass Lake Board made the appropriate decision in classifying the Brewers' residence as such and charging the corresponding sewer rate. I would accordingly reverse the judgment of the trial court, and I therefore dissent.