**YANKEE PARK HOMEOWNERS ASSOCIATION, INC., Appellant–Plaintiff,**

v.

**LaGRANGE COUNTY SEWER DISTRICT, Appellee–Defendant.**

No. 44A03–0804–CV–144.

Court of Appeals of Indiana.

July 31, 2008.

Max A. Myers, Robert L. Myers, Fort Wayne, IN, Attorneys for Appellant.

John R. Gastineau, Eberhard & Gastineau, Fort Wayne, IN, Attorney for Appellee.

## OPINION

BROWN, Judge.

Yankee Park Homeowners' Association, Inc. ("Yankee Park"), appeals the trial court's declaratory judgment in favor of the LaGrange County Sewer District ("District"). Yankee Park raises four issues, which we consolidate and restate as whether the trial court erred by finding that the District's actions in defining the terms "mobile home" and "mobile home court" and classifying Yankee Park as a mobile home court rather than a campground were not arbitrary and capricious. We affirm.

The relevant facts follow. The District is a regional sewer district in LaGrange County. Yankee Park owns property in LaGrange County and leases lots to members for the placement of "trailers." Ap-

pellant's Appendix at 37. Yankee Park is operated from April 15th through October 15th each year, but the trailers remain on the lots throughout the year. The trailers are used for vacation purposes, not as principal residences. The majority of the leased lots are occupied by trailers longer than 39 feet.

The District provided sanitary sewer services to Yankee Park and, until 2005, billed Yankee Park at the campground rate of 0.3 of the single-family dwelling rate per campsite per month. On October 18, 2005, the District informed Yankee Park that, based upon the types of structures located on the property and the use of those structures, the District had determined that Yankee Park was more accurately classified as a mobile home court than a campground and that their billing classification would change effective January 1, 2006. Mobile homes are billed at a rate of 0.75 of the single-family dwelling rate per mobile home per month. On May 10, 2006, the District enacted an ordinance defining the terms "mobile home," "mobile home court," and "recreational vehicle" for billing purposes. *Id.* at 55. The District defined "mobile home" as:

A residential structure that is transportable in one or more sections, which structure is thirty-five (35) feet or more in length with the hitch, is built on an integral chassis, is designed to be used as a place of human occupancy when connected to the required utilities, contains the plumbing, heating, air conditioning, and/or electrical systems in the structure, and is constructed so that it may be used with or without a permanent foundation.

*Id.* at 55. The District defined "mobile home court" as "a parcel of land containing two or more spaces, with required improvements and utilities, leased for the long-term placement of mobile homes."

*Id.* Further, the District defined "recreational vehicle" as "a travel trailer, park model, collapsible trailer, truck-mounted camper, or motor home. A 'recreational vehicle' is not a 'mobile home.'" *Id.*

Yankee Park filed a complaint for declaratory judgment, requesting that the ordinance and rates assessed against it be declared arbitrary and capricious. The parties submitted a stipulation of facts, affidavits, and memoranda to the trial court. The trial court then made findings of fact and conclusions of law, determining that the District had "acted rationally under its statutory authority to reclassify Yankee Park as a mobile home park and to bill it accordingly." *Id.* at 16.

The issue is whether the trial court erred by finding that the District's actions in defining the terms "mobile home" and "mobile home court" and classifying Yankee Park as a mobile home court rather than a campground were not arbitrary and capricious. The standard for judicial review of the District's action is whether it was arbitrary, capricious, or contrary to law. *Bd. of Dir. of Bass Lake Conservancy Dist. v. Brewer*, 839 N.E.2d 699, 701 (Ind.2005). Thus, the question for our review is whether the District acted arbitrarily, capriciously, or otherwise contrary to law in defining mobile home and mobile home court as it did for purposes of assessing sewer rates and by classifying Yankee Park as a mobile home court. "Under this narrow standard of review, we 'will not intervene in a local legislative process[, if it is] supported by some rational basis.'" *Id.* (quoting *Borsuk v. Town of St. John*, 820 N.E.2d 118, 122 (Ind.2005)). "We will find a municipal entity's action arbitrary or capricious only if it is 'patently unreasonable.'" *Id.* (quoting *South Gibson Sch. Bd. v. Sollman*, 768 N.E.2d 437, 441 (Ind.2002)). "In short, '[j]udicial review of whether a governmental agency

has abused its rulemaking authority is highly deferential.'" *Id.* (quoting *Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg,* 694 N.E.2d 222, 234 (Ind.1997)). We are not permitted to substitute our judgment for the municipality's discretionary authority. *Id.* Rather, we may only determine whether the municipality is acting within its statutory authority. *Id.*

 In *Bass Lake,* the Indiana Supreme Court noted that "[r]ate making is a legislative, not a judicial function." *Id.* "User classifications are inherent in ratemaking." *GPI at Danville Crossing, L.P. v. West Cent. Conservancy Dist.,* 867 N.E.2d 645, 650 (Ind.Ct.App.2007), *reh'g denied, trans. denied.* Thus, the District's classification of Yankee Park as a mobile home court falls under its ratemaking authority. *See id.* Our review in this case is limited to determining whether the District acted within the scope of its statutory authority, and if so, whether its actions were supported by some rational basis. *See Bass Lake,* 839 N.E.2d at 702; *see also* Ind. Code § 13–26–11–15(g) (noting that a court "shall determine ... (1) Whether the board of trustees of the district, in adopting the ordinance increasing sewer rates and charges, followed the procedure required by this chapter[;] (2) Whether the increased sewer rates and charges established by the board by ordinance are just and equitable rates and charges....").

Regional sewage districts are governed by Ind.Code §§ 13–26. Ind.Code § 13–26–5–2(7) grants a regional sewer district the power to:

Fix, alter, charge, and collect reasonable rates and other charges in the area served by the district's facilities to every person whose premises are, whether directly or indirectly, supplied with water or provided with sewage or solid waste services by the facilities for the purpose of providing for the following:

(A) The payment of the expenses of the district.

(B) The construction, acquisition, improvement, extension, repair, maintenance, and operation of the district's facilities and properties.

(C) The payment of principal or interest on the district's obligations.

(D) To fulfill the terms of agreements made with:

(i) the purchasers or holders of any obligations; or

(ii) a person or an eligible entity.

The District must establish "just and equitable rates or charges for the use of and the service provided...." Ind.Code § 13–26–11–8(a). The rates or charges must be determined based upon:

(1) A flat charge for each connection.

(2) The amount of water used on the premises.

(3) The number and size of water outlets on the premises.

(4) The amount, strength, or character of sewage discharged into the sewers.

(5) The size of sewer connections.

(6) Whether the property served has been or will be required to pay separately for the cost of any of the facilities of the works.

(7) A combination of these or other factors that the board determines is necessary to establish nondiscriminatory, just, and equitable rates or charges.

Ind.Code § 13–26–11–2(a).

The rates and charges "do not have to be uniform throughout the district or for all users." Ind.Code § 13–26–11–4. Rather, the board may exercise reasonable discretion in:

(1) adopting different schedules of rates and charges; or

(2) making classifications in schedules of rates and charges:

 (A) based upon variations in the costs of furnishing the services, including capital expenditures required, to various classes of users or to various locations in the district; or

 (B) where there are variations in the number of users in various locations in the district.

*Id.* Just and equitable rates and charges are "those that produce sufficient revenue to":

(1) pay all expenses incident to the operation of the works, including maintenance cost, operating charges, upkeep, repairs, and interest charges on bonds or other obligations;

(2) provide the sinking fund for the liquidation of bonds or other evidence of indebtedness and reserves against default in the payment of interest and principal of bonds; and

(3) provide adequate money to be used as working capital, as well as money for making improvements, additions, extensions, and replacements.

Ind.Code § 13–26–11–9(a). Additionally, Ind.Code § 13–26–11–9–(b) provides that "[r]ates and charges too low to meet the financial requirements ... are unlawful." Under Ind.Code § 13–12–2–1, we must "liberally construe[ ]" these statutes.

At issue here is the District's decision to define "mobile home" and "mobile home court" and to classify Yankee Park as a mobile home court rather than a campground. Ind.Code §§ 13–11, which provides definitions for Title 13, does not define *mobile home* or *mobile home court.*

Additionally, although Ind.Code § 13–26–11–2(b) makes provision for billing options for campgrounds, the term campground is not defined in Title 13.[1]

The District decided to define a "mobile home" as:

A residential structure that is transportable in one or more sections, which structure is thirty-five (35) feet or more in length with the hitch, is built on an integral chassis, is designed to be used as a place of human occupancy when connected to the required utilities, contains the plumbing, heating, air conditioning, and/or electrical systems in the structure, and is constructed so that it may be used with or without a permanent foundation.

Appellant's Appendix at 55. The District defined "mobile home court" as "a parcel of land containing two or more spaces, with required improvements and utilities, leased for the long-term placement of mobile homes." *Id.* Further, the District defined "recreational vehicle" as "a travel trailer, park model, collapsible trailer, truck-mounted camper, or motor home. A 'recreational vehicle' is not a 'mobile home.' " *Id.*

■ The District's basis for the reclassification of Yankee Park and other similarly situated properties as mobile home courts rather than campgrounds was: (1) each property had structures that were obviously mobile homes rather than recreational vehicles, campers, or tents; (2) the mobile homes were occupied for extended periods of time when the property was open for occupancy; (3) the mobile homes remained on the lots throughout the year, regardless of whether the property was open for occu-

---

1. Ind.Code § 13–26–11–2(b) provides, in part: If a campground is billed for sewage service at a flat rate under subsection (a), the campground may instead elect to be billed for the sewage service under this subsection by installing, at the campground's expense, a meter to measure the actual amount of sewage discharged by the campground into the sewers.

pancy or not; (4) the sanitary sewage collection, transmission, and treatment services were available to the properties year round and the District incurred the costs of operating and maintaining the system all year round regardless of whether a user chose to take advantage of it; and (5) similar properties in the District's Region A were charged at the mobile home court rate and the District wanted to treat the property owners in Region B consistently. *Id.* at 63–64.

Yankee Park argues that the District's actions were arbitrary and capricious because the District failed to utilize definitions of "campground" and "mobile home community" found in statutes and regulations governing the Indiana Department of Health.[2] However, the trial court concluded that the District was "not obligated or bound to use any of the definitions of the aforementioned terms found in statutes enacted for and rules promulgated by the Indiana Department of Health." *Id.* at 16.

The Indiana Supreme Court addressed a similar situation in *Bass Lake,* 839 N.E.2d at 701–703. There, homeowners built a residence with living areas, kitchens, and laundry rooms on both the upper and lower levels of the house. *Id.* at 700. The Bass Lake Conservancy District classified the residence as a duplex for purposes of assessing its sewer rate. *Id.* The homeowners objected, claiming that the ordi-

nance did not define duplex and that the ordinary meaning of the word should control. *Id.* at 701. After the district rejected the homeowners' appeal, the homeowners filed a petition for judicial review. *Id.* While the action was pending in the trial court, the district amended the ordinance to replace the term "duplex" with the term "multiplex" and defined multiplex as "a residential structure containing more than one living area." *Id.* The trial court determined that the district's classification of the residence as either a duplex or a multiplex was arbitrary and capricious. *Id.*

On appeal, this court affirmed. *Bd. of Dir. of Bass Lake Conservancy Dist. v. Brewer,* 818 N.E.2d 952, 960 (Ind.Ct.App. 2004), *vacated.* However, Judge Robb dissented, concluding that the district's actions were not arbitrary and capricious. *Id.* at 960–961 (Robb, J., dissenting). In particular, Judge Robb concluded:

The fact that how the Bass Lake Board has defined a duplex or multiplex is not how the English language dictionaries or the trial court or the majority would define the term is not determinative. Nor is the fact that the area where the Brewers live is zoned only for single-family residences controlling, as the zoning and sewer rate ordinances have different purposes. Although the two ordinances may use the same term, the term

2. 410 Ind. Admin. Code §§ 6–7.1, which is part of the regulations promulgated by the Indiana Department of Health, governs the sanitary engineering requirements of campgrounds. The regulations define campground as "area or tract of land where campsites are leased or rented and where provisions are made for ten (10) or more tents, recreational vehicles, park models, or *vacation mobile homes.*" 410 Ind. Admin. Code § 6–7.1–3 (emphasis added). Vacation mobile homes are defined as "a manufactured housing unit not on a permanent foundation used for recreational living on a temporary basis and not

occupied as a principal residence." 410 Ind. Admin. Code § 6–7.1–18. The Indiana Department of Health statutes governing the health, sanitation, and safety of mobile homes define mobile home community as "one (1) or more parcels of land: (1) that are subdivided and contain individual lots that are leased or otherwise contracted; (2) that are owned, operated, or under the control of one (1) or more persons; and (3) on which a total of at least five (5) mobile homes or manufactured homes are located for the purpose of being occupied as principal residences." Ind.Code § 16–41–27–5(a).

can be and is defined differently in order to meet the specific purpose of each ordinance.

A duplex, and subsequently a multiplex, was defined by the rate-making authority as a residential structure with more than one living area and the existence of separate cooking facilities. As there is no question that the Brewers' residence had two separate cooking areas, it was a duplex or multiplex as defined by the ordinance, and I would hold that the Bass Lake Board made the appropriate decision in classifying the Brewers' residence as such and charging the corresponding sewer rate.

*Id.*

The Indiana Supreme Court granted transfer and agreed with Judge Robb. 839 N.E.2d at 702–703. The Court noted that "[w]hile we recognize that the 'usual meaning of non-technical words in a statute is defined by their ordinary and accepted dictionary meaning,' when a government entity's intent 'reveals that a word is used in a manner different from its common dictionary definition, the common dictionary definition must be disregarded.'" *Id.* at 702 (internal citations omitted). The Court concluded that this court had "substituted its own test for defining duplex and multiplex for that of the Bass Lake Board." *Id.*

The Court agreed with Judge Robb's dissent that "the Bass Lake Board's standard for distinguishing between duplex or multiplex and single-family dwellings was neither arbitrary nor capricious." *Id.* Rather, "[t]he number of separate kitchen and laundry facilities in a dwelling is a rational basis for determining the number of households using the residence for purposes of assessing its sewage rate" and "[t]his is a determination squarely within the discretionary authority of the Bass Lake Board." *Id.* at 702–703. Additionally, the Court concluded that "[b]ecause the Brewers' home fits the District's criteria for classification as duplex or multiplex under its sewer rate Ordinance, it was neither arbitrary nor capricious for the Board to classify their residence as such." *Id.* at 703.

As in *Bass Lake*, the statutes and regulations governing the Indiana Department of Health may define mobile home community and campground differently than the District's ordinance, but those definitions are not binding upon the District. The statutes governing the District do not define mobile home community or campground, and the District's decision to classify properties containing mobile homes as mobile home courts rather than campgrounds regardless of the seasonal usage is rational.[3] The District's basis for distin-

---

**3.** Yankee Park also argues that the District has no logical basis for concluding that "a seasonal use park, in which a majority of the living units *exceed* 40 feet in length, warrants a sewer rate applicable to a mobile home community when a seasonal use park in which a majority of the living units are *under* 40 feet in length, qualifies for the campground rate." Appellant's Brief at 13. First, we note that Yankee Park's description of the ordinance is incorrect. The ordinance defines a structure "thirty-five (35) feet or more in length with the hitch" as a mobile home. Appellant's Appendix at 55. Yankee Park makes no argument that such a structure should be classified as anything other than a mobile home. In fact, other Indiana statutes similarly describe a mobile home as exceeding thirty-five feet in length. *See* Ind.Code § 6–1.1–7–1 (defining mobile homes for assessment and taxation purposes). Yankee Park's argument seems to focus more upon the use of the mobile home on a seasonal basis, and Yankee Park seeks a differentiation based upon seasonal use versus permanent residential use. As noted above, District's decision to classify properties as mobile home courts rather than campgrounds based upon the type of structures rather than the seasonal use is rational.

guishing between mobile home courts and campgrounds was not arbitrary or capricious. Moreover, the District's classification of Yankee Park as a mobile home court rather than a campground based upon the change was not arbitrary or capricious. *See, e.g., id.*

For the foregoing reasons, we affirm the trial court's judgment that the District's actions were not arbitrary or capricious.

Affirmed.

DARDEN, J. and NAJAM, J., concur.