

**FILED**

Dec 27 2018, 8:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS –
NORTHCREST R.V. PARK, BARBEE
LANDING MOBILE HOME PARK,
AND KUHN LAKE LAKESIDE RESORT

Bette J. Dodd
Joseph P. Rompala
Tabitha L. Balzer
Lewis & Kappes, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLANT – PINE
BAY RESORT

Jeffery A. Earl
Danville, Indiana

Robert M. Glennon
Danville, Indiana

ATTORNEYS FOR APPELLEE

Eric M. Blume
Larry L. Barnard
Andrew D. Boxberger
Carson LLP
Fort Wayne, Indiana

ATTORNEY FOR INTERVENOR

Donald J. Tribbett
Tribbett Law Office
Logansport, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Northcrest R.V. Park, Barbee
Landing Mobile Home Park,
Kuhn Lakeside Resort, and Pine
Bay Resort,

*Appellants-Complainants,*

v.

Lakeland Regional Sewer
District,

*Appellee-Respondent,*

and

Indiana Regional Sewer District
Association,

*Appellee-Intervenor.*

December 27, 2018

Court of Appeals Case No.
18A-EX-1243

Appeal from the Indiana Utility
Regulatory Commission

The Honorable James F. Huston,
Chairman

The Honorable Sarah E. Freeman
The Honorable David E. Ziegner
The Honorable David Ober,
Commissioners

The Honorable Lora L. Manion,
Administrative Law Judge

IURC Cause No.
44973

**Najam, Judge.**

# Statement of the Case

[1]   Northcrest R.V. Park, Barbee Landing Mobile Home Park, Kuhn Lakeside

Resort, and Pine Bay Resort (collectively, "the Mobile Home Parks") appeal

the decision of the Indiana Utility Regulatory Commission ("IURC") in favor

of the Lakeland Regional Sewer District ("the Sewer District"). The Mobile

Home Parks raise two issues for our review, but we find the following issue

dispositive: whether the IURC lacked jurisdiction to determine whether the

Sewer District had erred when the Sewer District classified the Mobile Home

Parks as "mobile home courts" rather than as "campgrounds" in the course of

the Sewer District's exercise of its ratemaking authority. We hold that the IURC lacked jurisdiction to review that issue, and, as such, the IURC properly entered summary judgment for the Sewer District and dismissed the Mobile Home Parks' complaints. Thus, we affirm.

## Facts and Procedural History

The Sewer District is a regional sewer district in Kosciusko County, and the Mobile Home Parks are each located in the Sewer District's service area. In 2015, the Sewer District enacted Ordinance No. 2015-02 ("the ordinance"),[1] which provided in relevant part as follows:

> Section 1. Unless the context specifically indicates otherwise, the meaning of the terms used in this ordinance shall be as follows:
>
> * * *
>
> b. "Campground" shall mean any real property that is set aside and offered by a Person for direct or indirect remuneration of the owner, lessor, or operator thereof for parking or accommodation of Recreational Vehicles, tents, camper trailers, camping trucks, motor homes, and/or similar shelters that are not designed for permanent or year-round occupancy.
>
> * * *

---

[1] The Sewer District subsequently enacted several ordinances that amended Ordinance No. 2015-02, but it is undisputed that each subsequent ordinance maintained the original definitions as relevant here.

m.  "Mobile Home" shall mean a residential structure that is transportable in one or more sections, is thirty-five (35) feet or more in length with the hitch, is built on an integral chassis, is designed to be used as a place of human occupancy when connected to the required utilities, contains the plumbing, heating, air conditioning, and/or electrical systems in the structure, and is constructed so that it may be used with or without permanent foundation.

n.  "Mobile Home Court" shall mean a parcel of land containing two or more spaces, with required improvements and utilities, used for the long-term placement of Mobile Homes.

* * *

t.  "Recreational Vehicle" shall mean a travel trailer, park model, collapsible trailer, truck-mounted camper, or motor home.  A "Recreational Vehicle" is not a "Mobile Home."

Appellants' App. Vol. IV at 80-82.  The Sewer District then implemented different rates based on, as relevant here, whether it had classified a property as a campground or as a mobile home court.  *See, e.g.*, Appellants' App. Vol. VIII at 61-62.

[3] The Sewer District did a site inspection of each of the Mobile Home Parks. According to that site inspection, one property "had 45 mobile homes and one recreational vehicle"; another "had 28 mobile homes"; a third "had 12 mobile homes, two recreational vehicles[,] and one empty lot"; and the fourth "had at least 22 mobile homes and at least three recreational vehicles."  Appellants'

App. Vol. II at 90. Based on that information, the Sewer District classified each of the Mobile Home Parks as mobile home courts. Some of the Mobile Home Parks asked the Sewer District to reconsider their classifications, which requests the Sewer District denied in August and September of 2015.

[4] None of the Mobile Home Parks filed a petition for declaratory judgment asking a court to review the ordinance's definitions. Instead, in late 2015 and early 2016, several of the Mobile Home Parks filed complaints with the IURC, in IURC Cause Number 44798 ("the first IURC action"), asking the IURC to review their classifications under the ordinance. However, the IURC dismissed those complaints without prejudice on the ground that they were not yet ripe as the Sewer District had not yet billed any of the Mobile Home Parks. Appellants' Addend. at 8;[2] *see also* Ind. Code § 13-26-11-2.1 (2018).

[5] Shortly thereafter, the Sewer District issued its first bills to the Mobile Home Parks at the rates established for mobile home courts, at which time the Mobile Home Parks filed their complaints against the Sewer District with the IURC in Cause Number 44973 ("the second IURC action"). In their complaints, the Mobile Home Parks again challenged their classifications under the ordinance

---

[2] Indiana Appellate Rule 50(A)(2)(h) directs appellants to include in their appendices "any record material relied on in the brief unless the material is already included in the Transcript." And Indiana Appellate Rule 22(C) requires "[a]ny factual statement" by a party to be "supported by a citation" to "an Appendix" or to "the Transcript or exhibits." If such a statement is additionally supported by material included in an addendum to a brief, the party's citation should be "to the Appendix or Transcript *and* to the Addendum to Brief." Ind. Appellate Rule 22(C) (emphasis added). Here, the Mobile Home Parks have included the documents from the first IURC action as well as the Kosciusko Superior Court's July 2017 order only in an addendum to their briefs and not also in their appendices, which is contrary to our appellate rules.

as mobile home courts rather than as campgrounds.[3] Meanwhile, the Sewer District moved for declaratory judgment in the Kosciusko Superior Court on the ground that the ordinance definitions were a lawful exercise of the Sewer District's authority. The Kosciusko Superior Court stayed the declaratory judgment proceeding during the pendency of the second IURC action.

[6] In November of 2017, the Mobile Home Parks and the Sewer District moved for summary judgment in the second IURC action. On May 16, 2018, the IURC entered summary judgment for the Sewer District. In its order, the IURC rejected the Sewer District's argument that the IURC lacked subject matter jurisdiction to review the Sewer District's classification of the Mobile Home Parks. Instead, the IURC concluded that, because Indiana Code Section 13-26-11-2.1 permits the IURC to review specific billing disputes between regional sewer districts and "campgrounds," the IURC had "implicit jurisdiction to adjudicate whether a regional sewer district has properly classified [an entity] as a campground . . . ." Appellants' App. Vol. II at 40-41 (capitalization removed).

[7] Nonetheless, the IURC also concluded that Indiana law "does not authorize the [IURC] to approve or revise regional sewer district ordinances regarding customer rates and classifications" but that, instead, the IURC only "has

_____

[3] Later, the Indiana Regional Sewer District Association ("IRSDA") moved to intervene in the second IURC action, which the IURC permitted. The IRSDA has also filed a brief in this appeal in support of the Sewer District.

authority to resolve billing disputes" under Indiana Code Section 13-26-11-2.1. *Id.* at 44. In light of that conclusion, the IURC decided that the Sewer District had "acted within its legal authority to adopt rates and to make classifications." *Id.* at 46-47. The IURC also concluded that the Mobile Home Parks "did not apply the requirements in [the Sewer District's] definition of Campground to their properties" in support of their motions for summary judgment; as such, the IURC found that, insofar as it had the authority to determine the question, the Mobile Home Parks had failed to support their classification disputes with designated evidence. *Id.* at 47. The IURC then entered summary judgment for the Sewer District and "dismissed" the Mobile Home Parks' complaints. *Id.* at 48. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[8] The Mobile Home Parks appeal the IURC's entry of summary judgment for the Sewer District. "This Court reviews summary judgments *de novo*." *Erie Indem. Co. v. Estate of Harris*, 99 N.E.3d 625, 629 (Ind. 2018). Summary judgment is appropriate only when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* (citing Ind. Trial Rule 56(C)). We may affirm the IURC's decision on summary judgment "on any theory or basis supported by the record." *See Markey v. Estate of Markey*, 38 N.E.3d 1003, 1006-07 (Ind. 2015).

[9]     This appeal turns on whether the Indiana General Assembly has conferred jurisdiction on the IURC to review the Sewer District's classifications of its users. "'To the extent the issue turns on statutory construction, whether an agency possesses jurisdiction over a matter is a question of law for the courts.'" *Walczak v. Labor Works-Ft. Wayne LLC*, 983 N.E.2d 1146, 1152 (Ind. 2013) (quoting *Ind. Dep't of Envtl. Mgmt. v. Twin Eagle LLC*, 798 N.E.2d 839, 844 (Ind. 2003)). That is, the issue of "statutory construction . . . on the question of [an agency's] jurisdiction . . . lies squarely within the judicial bailiwick." *Id.* at 1153.

[10]    As the Indiana Supreme Court has explained:

> [W]hen we construe any statute, our primary goal is to effectuate legislative intent. *Shepherd Props. Co. v. Int'l Union of Painters & Allied Trades. Dist. Council 91*, 972 N.E.2d 845, 852 (Ind. 2012). We presume the General Assembly intended the statutory language to be applied logically and consistently with the statute's underlying policy and goals, *id.*, and we avoid construing a statute so as to create an absurd result. *St. Vincent Hosp. & Health Care Ctr. Inc. v. Steele*, 766 N.E.2d 699, 704 (Ind. 2002).

*Id.* at 1154.

### The Sewer District's Broad and Exclusive
### Authority to Classify Users Under the Indiana Code

[11]    Regional sewer districts are the entities responsible for setting the rates and charges necessary for the collection, treatment, and disposal of sewage in their regions. I.C. § 13-26-11-8; *see also* Appellants' App. Vol. VI at 230-31. Regional

sewer districts are empowered by statute to base their rates and charges for each user "on a combination of . . . factors," namely: the number of connections at a premises; the amount of water used; the number and size of outlets; the "amount, strength, or character of sewage discharged"; the size of the sewer connections; whether a given premises has been or will be required to pay separately for the cost of any facilities of the regional sewer district; and any "other factors" the regional sewer district "determines is necessary to establish nondiscriminatory, just, and equitable rates or charges." I.C. § 13-26-11-2. A regional sewer district's rates and charges to its users must by law "produce sufficient revenue" for the operation of the regional sewer district, and rates and charges that fail to do so "are unlawful." I.C. § 13-26-11-9.

[12] Pursuant to their ratemaking authority, Indiana Code Section 13-26-11-4 authorizes regional sewer districts, in the "exercise [of] reasonable discretion," to adopt nonuniform rates and charges that correspond with "classifications . . . based upon variations in the costs of furnishing the services, including capital expenditures required, to various classes of users . . . ." In other words, our legislature has committed to regional sewer districts the authority to define "various classes of users" within the district. I.C. § 13-26-11-4. That authority is inexorably intertwined with a regional sewer district's ratemaking authority. *See* I.C. §§ 13-26-11-2, -4.

[13] We have previously recognized that a regional sewer district's use of an ordinance to define and classify a user as a "mobile home court rather than a campground . . . falls under its ratemaking authority." *Yankee Park Homeowner's*

*Ass'n, Inc. v. LaGrange Cty. Sewer Dist.*, 891 N.E.2d 128, 130-31 (Ind. Ct. App. 2008), *trans. denied*. Indeed, the definitions of "mobile home court" and "campground" at issue in *Yankee Park* were substantially similar to the Sewer District's definitions here. *See id.* at 132-33. And, in the more-than-ten years since this Court's decision in *Yankee Park*, the Indiana General Assembly has not amended the relevant provisions of the Indiana Code to either supersede our analysis or to define "campground" for our regional sewer districts. *Cf. Myers v. Crouse-Hinds Div. of Cooper Indus., Inc.*, 53 N.E.3d 1160, 1163-64 (Ind. 2016) (stating that the Court would not reconsider prior judicial holdings and would instead apply the doctrine of legislative acquiescence in light of the "considerable time" that had passed since the prior holdings without statutory amendment) (quotation marks omitted). Our opinion in *Yankee Park* informs our disposition of the instant appeal.

[14] Although Section 13-26-11-4 leaves defining classes of users to the discretion of regional sewer districts, Indiana Code Section 13-26-11-2 ("Section 2") states that, when a regional sewer district levies a rate or charge against a "campground," the following occurs:

> (b) A campground . . . may be billed for sewage service at a flat rate or by installing, at the campground's . . . expense, a meter to measure the actual amount of sewage discharged by the campground . . . into the sewers. If a campground . . . elects to be billed by use of a meter:
>
> > (1) the rate charged by a board [of trustees of a regional sewer district] for the metered sewage service may not

exceed the rate charged to residential customers for equivalent usage;

\* \* \*

(c) If a campground . . . does not install a meter under subsection (b) and is billed for sewage service at a flat rate . . . :

> (1) each campsite at the campground may not equal more than one-third (1/3) of one (1) resident equivalent unit;

\* \* \*

(d) The board may impose additional charges on a campground . . . under subsections (b) and (c) if the board incurs additional costs that are caused by any unique factors that apply to providing sewage service for the campground . . . , including, but not limited to:

> (1) the installation of:
>
> > (A) oversized pipe; or
> >
> > (B) any other unique equipment;
>
> necessary to provide sewage service for the campground . . . ; and
>
> (2) concentrations of biochemical oxygen demand (BOD) that exceed federal pollutant standards.

We also note that Indiana Code Section 13-26-11-13 establishes a procedure by which "the lesser of fifty (50) or ten percent (10%) of the ratepayers of the district may file a written petition objecting to the initial rates and charges" established by a regional sewer district's initial ratemaking ordinance. The regional sewer district's order on such a petition may then be appealed to an Indiana trial court with jurisdiction over the district. I.C. § 13-26-11-13(h). Indiana Code Section 13-26-11-15 establishes a similar procedure of administrative and judicial review of a regional sewer district's ordinance, but the procedure established in that section is expressly limited to "an ordinance increasing sewer rates and charges at a rate that is greater than five percent (5%) per year, as calculated from the rates and charges in effect from the date of the district's last rate increase . . . ." That is, the procedure outlined in Section 13-26-11-15 is limited to petitions to review certain increases over previously established rates and charges. However, neither Section 13-26-11-13 nor Section 13-26-11-15 prohibits a user from seeking declaratory relief from a regional sewer district's ordinance. *See, e.g.*, *Yankee Park*, 891 N.E.2d at 130.

### *The IURC's Highly Limited Authority to Review Specific Assessments and Charges Levied by a Regional Sewer District Against a "Campground"*

The IURC is

> primarily . . . a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature. *United Rural Elec. Membership Corp. v. Ind. & Mich. Elec. Co.*, 549 N.E.2d 1019 (Ind. 1990); *See* Ind. Code § 8-1-1-5 (2008). The [IURC's] assignment is to insure that public utilities provide

constant, reliable, and efficient service to the citizens of Indiana. *Ind. Bell Tel. Co. v. Ind. Util. Regulatory Comm'n*, 715 N.E.2d 351, 354 n.3 (Ind. 1999). The [IURC] can exercise only power conferred upon it by statute. *United Rural Elec. Membership Corp.*, 549 N.E.2d at 1021.

*N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.*, 907 N.E.2d 1012, 1015 (Ind. 2009). It is well established that, "if the power to act has not been conferred by statute" to the IURC, "it does not exist. . . . Accordingly, any doubt about the existence of authority must be resolved against a finding of authority." *S.E. Ind. Nat. Gas Co. v. Ingram*, 617 N.E.2d 943, 947 (Ind. Ct. App. 1993) (citations omitted).

[17]   Indiana Code Section 13-26-11-2.1 ("Section 2.1") is narrowly drawn and authorizes the IURC to conduct a limited review of certain rates and charges levied by a regional sewer district against a "campground." In particular, Section 2.1 states:

> (b)  This section applies to an owner or operator of a campground . . . who disputes:
>
> > (1) that the campground is being billed at rates charged to residential customers for equivalent usage as required by section 2(b)(1) of this chapter;
> >
> > (2) the number of resident equivalent units determined for the campground under section 2(c) of this chapter; or
> >
> > (3) that any additional charges imposed on the campground under section 2(d) of this chapter are reasonable or nondiscriminatory.

* * *

(e)  In any case in which the basic monthly charge for a campground's sewage service is in dispute, the owner or operator shall pay, on any disputed bill issued while a review under this section is pending, the basic monthly charge billed . . . .  If the basic monthly charge paid while the review is pending exceeds any monthly charge determined by the [IURC] . . . the board shall refund or credit the excess amount paid to the owner or operator.  If the basic monthly charge paid while the review is pending is less than any monthly charge determined by the appeals division or [IURC] . . . the owner or operator shall pay the board the difference owed.

* * *

(h)  The right of a campground owner or operator to request a review under this section is in addition to the right of the campground owner or operator to file a petition under section 15 of this chapter [relating to certain increases in previously established rates and charges] as a freeholder of the district . . . .

As with Section 2, Section 2.1 leaves "campground" undefined.  *See* I.C. §§ 13-26-11-2, -2.1.

### *The IURC Incorrectly Read Section 2.1 as a Grant of Jurisdiction to the IURC over the Sewer District's Classification of Users*

[18]  The Mobile Home Parks filed their complaints with the IURC against the Sewer District on the theory that they were "campgrounds" under Section 2.1, even though they were not campgrounds under the Sewer District's ordinance.  According to the Mobile Home Parks on appeal, "the lack of statutory

definition [of 'campground' in Section 2.1] mandates . . . that the [IURC]—not the regional sewer district—must define 'campground' for purposes of determining whether a regional sewer district's charges comport with the statute." NBK Complainants' Br. at 26. The Mobile Home Parks assert that, "to hold otherwise . . . effectively nullifies the [IURC's] statutory duty [under Section 2.1] to review rate disputes and would lead to absurd results." *Id.* The Mobile Home Parks also assert that, under a broad dictionary definition of "campground," they have standing under Section 2.1 to petition for IURC review of their assessed rates and charges, even though the Mobile Home Parks have not been classified as campgrounds by the Sewer District in the first instance and have no campground-related rates and charges to dispute.

[19] In its response, the Sewer District argues that, under Section 2 and Indiana Code Section 13-26-11-4, it has exclusive jurisdiction over the definition and classification of its users for ratemaking purposes, and nothing in Section 2.1 confers jurisdiction on the IURC to review those definitions. In its order on summary judgment, the IURC appeared to conclude both that it had jurisdiction to interpret "campground" under Section 2.1—and, thus, to impose its own definition on regional sewer districts—and also that the IURC was required to defer to the Sewer District's lawfully enacted definition.

[20] We agree with the Sewer District's reading of the relevant statutes. The statutory responsibility for the classification of users of a regional sewer district's services is committed to the regional sewer districts, not to the IURC. I.C. § 13-26-11-4. Section 2 then sets out in detail numerous factors a regional

sewer district may take into account in setting rates and charges for each class of its users. I.C. § 13-26-11-2. And Section 2.1 is *in pari materia* with the Sewer District's ratemaking authority. Statutes that are *in pari materia* "relat[e] to the same subject matter" and, as such, "should be construed together to produce a harmonious statutory scheme." *Campbell Haufeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 958 (Ind. 2018) (quotation marks omitted). Section 2.1 is expressly premised on rates and charges levied against campgrounds under Section 2; that is, Section 2.1 operates in tandem with Section 2 and the rest of the Indiana Code's conferral of ratemaking power on a regional sewer district.

[21] Indeed, Section 2.1(b) is narrowly drawn and grants to the IURC the authority to hear appeals from campgrounds over rates and charges levied by a regional sewer district only in three highly limited circumstances. First, the IURC may review a dispute brought by a metered campground as to whether a regional sewer district has properly billed the campground "at rates charged to residential customers for equivalent usage as required . . . ." I.C. § 13-26-11-2.1(b)(1). Second, the IURC may review a dispute from a campground that is billed at a flat rate and asserts that a regional sewer district has improperly determined "the number of resident equivalent units" for billing purposes. I.C. § 13-26-11-2.1(b)(2). And, third, the IURC may review a dispute brought by a campground regarding an "additional charge," which regional sewer districts may bill specifically to campgrounds in certain circumstances, on the ground that such charge is unreasonable or discriminatory. I.C. § 13-26-11-2.1(b)(3).

None of those three bases for IURC review touches on any of the other numerous and expressly identified factors a regional sewer district may consider under Section 2 in setting rates or charges. Rather, the three limited bases for IURC review under Section 2.1 are simply claims of an incorrect billing process. Indeed, each scenario under Section 2.1 is premised on a regional sewer district having already classified a user as a campground and then improperly assessed or charged the user *as a campground*. It is that assessment or charge, not the classification, that is then the basis for IURC review.

Other provisions of the Indiana Code support the Sewer District's reading of the statutory scheme. Namely, each of the three bases for IURC review under Section 2.1 requires the user to initially pay the bill in dispute and then be refunded if the appeal to the IURC is successful. I.C. § 13-26-11-2.1(e). This process requires an assessment or charge to a user the regional sewer district has already classified as a campground to have previously occurred. Similarly, subsection (h) of Section 2.1 states that IURC review under that statute is "in addition" to administrative and judicial review "under section 15"—as noted above, Indiana Code Section 13-26-11-15 relates exclusively to certain *increases* in established rates. It does not relate to *initial* ratemaking, which is when classifications are most likely to be first defined, even if subsequent ordinances adopt the previously established definitions. *See* I.C. § 13-26-11-13 (providing for administrative and judicial review from initial ratemaking ordinances). In other words, the statutory scheme reflects the clear intent of the General Assembly to give the IURC jurisdiction to engage in limited review of certain

billing disputes, nothing more, between regional sewer districts and campgrounds.

[24] The Mobile Home Parks conflate the authority of regional sewer districts to enact ordinances that classify users with the IURC's authority to review specific billing disputes. Indeed, under the Mobile Home Parks' argument, each and every user in a regional sewer district would have standing to seek IURC review of a regional sewer district's classifications, and thus its rates, so long as that user takes some broad act that qualifies as "camping." *See, e.g.*, NBK Complainants' Br. at 36-38. This reasoning is backwards. IURC review under Section 2.1 is limited to users who have already been classified as campgrounds by a regional sewer district and then improperly billed in one of three specific ways; it does not apply to users who claim to have been improperly classified and thus never properly billed at all.

[25] Moreover, the Mobile Home Parks' reasoning would confer jurisdiction on the IURC under Section 2.1 to redefine a regional sewer district's classifications without considering the myriad of factors that a regional sewer district considers under Section 2, which is contrary to the ratemaking directives established in the Indiana Code. If the General Assembly had intended for Section 2.1 to confer jurisdiction on the IURC to define, review, or otherwise interject itself into a regional sewer district's classifications and corresponding ratemaking discretion, we think the General Assembly would have plainly said so. *See, e.g.*, *S.E. Ind. Nat. Gas Co.*, 617 N.E.2d at 947. And this conclusion is

consistent with the legislative silence following our decision in *Yankee Park*. *See Myers*, 53 N.E.3d at 1163-64.

[26] Still, on appeal the Mobile Home Parks substantially rely on language from the IURC's dismissal order in the first IURC action. In particular, in that order the IURC opined that it might have the authority under Section 2.1 to impose a definition of "campground" on regional sewer districts. But that language was obvious dicta as it had no bearing on the decision to dismiss due to the absence of any billing at the time. As such, it was not binding on the IURC in the second IURC action, let alone on this Court now.

[27] The Mobile Home Parks further assert that subsection (i) of Section 2.1 authorizes the IURC to promulgate rules in furtherance of the authority conferred on the IURC under that statute. The Mobile Home Parks reason that that rule-making authority means the IURC can use Section 2.1 to impose a definition of "campground" on regional sewer districts. This argument is a nonstarter. The IURC's authority under Section 2.1 to promulgate rules in furtherance of the statute cannot be expanded to promulgate rules that would supersede the statute.

[28] We hold that the IURC erred when it concluded that it had jurisdiction under Section 2.1 to independently define a "campground" for purposes of ratemaking by regional sewer districts. The Indiana Code expressly commits the authority to define a regional sewer district's classes of users to the discretion of the ratemaking authority, the regional sewer district. I.C. § 13-26-

11-4. The IURC is then authorized to review only certain expressly limited assessments or charges levied by a regional sewer district against a user already classified as a campground by the regional sewer district. I.C. § 13-26-11-2.1. Insofar as the IURC concluded below that it has jurisdiction to consider whether a complainant is a "campground" for purposes of standing to seek IURC review under Section 2.1, we hold that that review is limited to simply determining whether the complainant has been billed as a campground by the regional sewer district. As a reviewing body, the IURC may not "substitute its own judgment for the municipality's discretionary authority . . . ." *Bd. of Dirs. of Bass Lake Conservancy Dist. v. Brewer*, 839 N.E.2d 699, 701 (Ind. 2005) (quotation marks omitted).

[29] Here, the Mobile Home Parks were not classified as campgrounds by the Sewer District. Accordingly, they lacked standing to petition the IURC for review under Section 2.1, and their request to have the IURC review their classification as mobile home courts is not within the scope of jurisdiction conferred by the General Assembly on the IURC in Section 2.1. If the Mobile Home Parks are dissatisfied with the Sewer District's narrow definition of "campground" in the ordinance, they may be able to seek declaratory relief. *See, e.g.*, *Yankee Park*, 891 N.E.2d at 130; *see also* Appellants' App. Vol. VI at 232 ("If a [regional sewer district] is to face a challenge to its billing classifications or rates, it is imperative that such a challenge be singular and occur as soon as reasonably practical after billing classifications are made."). However, Section 2.1 does not provide them with an end-run around our prior holding in *Yankee Park* that substantially

similar definitions adopted by another regional sewer district were "rational" and "not arbitrary or capricious." *Id.* at 134-35. As such, we affirm the IURC's entry of summary judgment for the Sewer District and dismissal of the Mobile Home Parks' complaints.

[30] Affirmed.

Pyle, J., and Altice, J., concur.