

FILED

Apr 06 2017, 10:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT –
TOWN OF CLEAR LAKE

Jeffrey P. Smith
David K. Hawk
Hawk, Haynie, Kammeyer
& Smith, LLP
Fort Wayne, Indiana

ATTORNEYS FOR AMICI CURIAE –
ASSOCIATION OF CITIES AND TOWNS
AND THE INDIANA MUNICIPAL
LAWYERS ASSOCIATION

Nicholas K. Kile
Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jonathan O. Cress
Cress Law Group P.C.
Angola, Indiana

Diana C. Bauer
Bauer Legal LLC
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Town of Clear Lake,

*Appellant-Plaintiff,*

v.

Hoagland Family Limited
Partnership,

*Appellee-Defendant*

April 6, 2017

Court of Appeals Case No.
76A05-1606-PL-1241

Appeal from the Steuben Circuit
Court

The Honorable Allen N. Wheat,
Judge

Trial Court Cause No.
76C01-1006-PL-425

**Baker, Judge.**

The Town of Clear Lake (the Town) appeals the judgment of the trial court, which granted summary judgment to Hoagland Family Limited Partnership (Hoagland) and denied the Town's motion for partial summary judgment. The trial court ruled that until the Town made its sewer system accessible through the installation of a grinder pump, it could not enforce penalties against Hoagland for failure to connect to the sewer system. Hoagland also argues that several alleged procedural errors made by the Town should preclude the Town from compelling connection to the sewer system. Finding that the Town does have the authority to compel Hoagland's connection to its sewer system and no procedural error, we reverse and remand.

# Facts[1]

Hoagland owns three parcels of real estate ("the properties") located in the Town. Although the Town operates a sanitary sewer system, Hoagland's properties are not connected to it and contain their own septic systems. Each of the properties are within 300 feet of the Town's sewers. In May 2001, as the Town prepared to install its sewer system, it requested an easement for each of the properties so that it could connect them to the sewer system, but Hoagland declined the request.

---

[1] We held oral argument on March 10, 2017, in Indianapolis. We thank both parties and amicus for their excellent and informative oral advocacy.

[3]     In 2003, the Town passed the following ordinance:

> The owners of all houses, buildings or properties used for human occupancy, employment, recreation or other purposes situated within the town and which [sic] the property line is within 300 feet of the sanitary sewer is [sic] required at his or her expense to install suitable toilet facilities therein and to connect such facilities directly with the proper sewer in accordance with the provisions of this chapter.

Clear Lake, Ind., Code of Ordinances § 51.51(A). The Town also adopted an ordinance mandating that "[n]o authorized[2] person shall uncover, make any connections with or opening into, use, alter, or disturb any public sewer or appurtenance thereto without first obtaining a written permit from the Town Council." *Id.* at § 51.52(A)(1). "[T]he owner or his or her agent shall make application on a special form furnished by the town. The permit applications shall be supplemented by any plans, specifications, or other information considered pertinent in the judgment of the Inspector." *Id.* at § 51.52(A)(2).

[4]     In April 2005, after the Town had installed its system, Hoagland filed an action alleging that the Town had inversely condemned its land by running a sewer main under Hoagland's property. This suit ended in October 2010 with a settlement between the parties.

---

[2] We question whether the drafters of the ordinance intended to refer to "unauthorized" persons.

[5] Eight months after Hoagland filed the complaint against the Town, the Town passed a Resolution directing the Town's attorney to take legal action against several residents who had not connected to the sewer system; Hoagland's three properties were on the list. Appellant's App. p. 518.

[6] In May 2009, the Town amended its penalty ordinance. Whereas the penalty for violation of a Town ordinance had been set at a minimum of $100 and a maximum of $1000, the new penalty for failure to connect to the sewer system was $500, per day, per property, with no express limit. CLC § 51.99(B).[3]

[7] On January 12, 2010, the Town gave Hoagland notice that Hoagland must connect the properties to the Town's sewer system within ninety days:

> you are hereby given notice that the Town of Clear Lake will proceed to compel connection of the above described properties to the Town of Clear Lake sewer system unless all of said properties are connected to the sewer system within ninety (90) days. You are further given notice that any use of privies, cesspools, septic tanks, or similar structures must be discontinued within ninety days (90) from today. Failure to connect to the Clear Lake sewer system within ninety (90) days may subject the Hoagland Family Limited Partnership to fines, court costs and attorney fees as allowed by Indiana Code and the Town of Clear Lake Ordinances.

---

[3] A previous zoning administrator of the Town, David Gardiner, testified that "it sure looked like" the Town had a "get Hoagland policy." Appellant's App. p. 557.

Appellant's Supp. App. p. 68. This letter also informed Hoagland that since it had been "benefit[ting]" from the sewer system to which its properties were not yet connected, the Town was also demanding immediate payment of $4,537.38 in back charges for each property, or a total of $13,612.14. *Id.*

[8] After Hoagland did not take any action, the Town filed a complaint in which it asked for an order requiring connection, sewer charges that Hoagland allegedly should have been paying plus a further ten percent penalty pursuant to local ordinance, $500 per property per day for each day Hoagland remained unconnected, an order requiring the discontinuance of any private septic systems, and attorney fees and costs. In its answer, Hoagland argued that the Town's claims were barred because they were compulsory counterclaims that should have been asserted during the previous litigation involving inverse condemnation, that the Town's notice to connect was defective, and that the sewer system was generally illegal.

[9] After competing motions for summary judgment and hearings on those motions, on May 4, 2016, the trial court granted summary judgment to Hoagland and denied it to the Town. The Town stipulated that Hoagland cannot complete a connection to the sewer system without the presence of grinder pumps, that the Town has not installed any grinder pumps through which Hoagland could connect to the sewers, and that the Town had not commenced any eminent domain proceedings to put grinder pumps on Hoagland's property. The trial court noted that the Town's claimed penalties had exceeded $2.9 million by the time of the last hearing. It ruled that

Hoagland's compelled connection with the Town's sewer system would involve a taking of land and that, under Article One, Section 21 of the Indiana Constitution, the Town could not proceed until it had assessed and tendered just compensation to Hoagland. The Town now appeals.

## Discussion and Decision

[10] When reviewing an entry of summary judgment, the Court of Appeals stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse. *AutoXchange.com, Inc. v. Dreyer & Reinbold, Inc.*, 816 N.E.2d 40, 47 (Ind. Ct. App. 2004). Thus, on appeal this Court determines whether there is a genuine issue of material fact and whether the trial court correctly applied the law. *Id.* The entry of summary judgment will be reversed where the law has been incorrectly applied to the facts. *Markey v. Estate of Markey*, 38 N.E.3d 1003, 1006 (Ind. 2015).

[11] Indiana Code section 36-9-23-30(a) permits a municipality operating a sewage system to require connection to the system and to order the discontinuance of the use of any private sewage system. The only limitations on the exercise of this power are that there must be "an available sanitary sewer within three hundred (300) feet of the property line of the affected property" and that the municipality gives the property owner ninety days' notice. I.C. § 36-9-23-30(b). Municipalities may enforce "reasonable penalties" against a person failing to make a connection, and a court "shall" assess court costs and reasonable attorney fees against the property owner. *Id.* at -30(c); -30(d).

# I. Eminent Domain

Although the trial court's ruling depended in part on the law of eminent domain, a government order to connect a property to a sewer system does not, by itself, involve a "taking." As the United States Supreme Court has held, "It is the commonest exercise of the police power of a state or city to provide for a system of sewers, and to compel property owners to connect therewith. And this duty may be enforced by criminal penalties." *Hutchinson v. City of Valdosta*, 227 U.S. 303, 308 (1913); *see Alperstein v. Three Lakes Water & Sanitation*, 710 P.2d 1186, 1189 (Colo. Ct. App. 1985) ("Numerous state courts have followed [the Supreme Court's] holding that personal notice and a hearing are not required prior to ordering connection to a public sewer system").

On the other hand, the trial court is clearly correct that connection to the Town's sewer system will eventually involve a governmental taking; Robert Hull, the Superintendent of the Town, explained, "You cannot hook to our system without a grinder pump." Appellant's App. 512. The Town's ordinances make clear that the grinder pumps will be owned and operated by the Town, not the property owner. CLC § 51.62. It is well settled that the Town will need to conduct eminent domain proceedings in order to obtain an easement on which to place the grinder pump. *E.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) ("We conclude that a permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve").

[14] The dispute between the parties centers on whether the Town or Hoagland has to act first. Hoagland points to the language in the Indiana Code: the Town is only permitted to order connection if there is "an *available* sanitary sewer." I.C. § 36-9-23-30(a) (emphasis added). Without availability, the Town has no authority to compel connection. Town Superintendent Hull agreed in a deposition that without a grinder pump on the property, "the Town's sanitary system would be unavailable to that property owner." Appellant's App. p. 508. Likewise, Town Council member Alan Korte "agree[s] that the town sanitary sewer system is unavailable to the Hoagland Family Limited Partnership property without the installation of the grinder pump . . . ." *Id.* at 488. Hoagland argues that summary judgment was appropriately granted in its favor because the undisputed evidence, including the precise testimony of Town officials, shows that until the Town builds a grinder pump, the sewer system is not available.

[15] The Town counters that its January 2010 letter, which explicitly ordered connection to its sewer system, implicitly ordered Hoagland to apply for a permit to connect to the sewer system. Such an application will contain information useful to the Town in deciding where to put grinder pumps. "Until such action is taken by the property owner, the size, location, and necessity of easements cannot be determined." Appellant's Br. p. 10. The Town further asserts that, depending on the plans submitted by Hoagland, the three properties might be served by a single grinder pump; therefore, the Town argues that it cannot be forced to first obtain the easements for the grinder pumps

because it cannot know where to place the easements. The Town also suggests that Hoagland's properties might be served by grinder pumps located on other properties.[4]

[16] Ordinances are treated as if they stand on the same footing as an act of the legislature; therefore, the rules applying to statutory construction apply equally to ordinances. *Lutz v. City of Indianapolis*, 820 N.E.2d 766, 770 (Ind. Ct. App. 2005). The primary rule of statutory construction is to ascertain and give effect to the intent of the drafters, and the plain language of the statute (or ordinance) is the best evidence of the drafters' intent. *Id.* All words must be given their plain and ordinary meaning unless otherwise indicated. *City of Indianapolis v. Campbell*, 792 N.E.2d 620, 624 (Ind. Ct. App. 2003).

[17] We recognize that both parties have defensible interpretations of the relevant statutes and ordinances. And we acknowledge that it is every American's birthright to be displeased at governmental orders. Ultimately, however, we believe that the Town's interpretation of the law is correct. The word "available" in the statute can only be read to refer to a working sanitary system. Because it is undisputed that the Town is operating a working sanitary system, there was an "available" sanitary sewer within 300 feet of the properties, and

---

[4] Hoagland argues that this final contention was never presented to the trial court, that the Town stipulated that it would eventually need to put a grinder pump on Hoagland's property, and that therefore the Town is estopped from pursuing this particular line of reasoning. Because our conclusion would not change based on how this argument is decided, we decline to address it.

therefore the Town has the statutory authority to order Hoagland to connect to it.

[18] While Hoagland is understandably not happy about the prospect of disconnecting a septic system for which it paid and installing a lateral line to reach the sewer system it does not want to use, its reading of the law would require the Town to be *more* intrusive and dictatorial. In the name of defending its property rights from the overreaching Town, Hoagland is demanding that the Town take absolute control over where the grinder pump will be placed and where it will need to run its lateral line to meet the grinder pump.

[19] The Town does not know where sewage will exit the Hoagland homes; if the Town were to place the grinder pump based on its own whim, it would likely cost Hoagland (and other residents in a similar position) even more money to accommodate the Town's placement. Under the Town's reading, Hoagland can propose the most cost-effective method of extending the lateral lines and the Town will accommodate Hoagland by placing the grinder pump where Hoagland deems most convenient. Indeed, we find it highly likely that, if the Town or other governmental entities were to attempt to dictate the placement of grinder pumps on residents' properties, such actions would lead to a significant amount of litigation in which residents would ask courts to allow them to engage in precisely the type of process the Town is currently proposing. Just as courts require parties to mitigate their damages in tort and contract disputes, we favor an interpretation of the law that minimizes the costs and other burdens residents will face.

[20] Hoagland argues that the Town is attempting to find an end run around the requirement to pay just compensation for a governmental taking of property. We do not find this argument persuasive. To be clear, Hoagland was perfectly within its rights to reject the Town's request to voluntarily donate an easement on which to place the grinder pumps. Nor is Hoagland required to accept any offer of compensation the Town may put forth for an easement on its property. Hoagland has the right to force the Town to initiate eminent domain proceedings, through which a court with the aid of assessors will ensure that the Town pays just compensation for the physical occupation of the grinder pump on the property.

[21] In sum, because the Town is operating a functioning sanitary sewer within 300 feet of the properties, there is an "available" sewer under the meaning of Indiana Code section 36-9-23-30(a). Accordingly, the Town has the authority to compel Hoagland's connection to the sewer system. Finally, the Town's proposed process—having Hoagland submit an application with plans and schematics of the easiest and most convenient method of extending a lateral line to the sewer—is more economical and less burdensome than Hoagland's proposal of forcing the Town to take property and ask questions later. Partial summary judgment should have been awarded to the Town on this issue.

# II. Alleged Procedural Defects

[22] Hoagland argues that the Town committed several procedural defects that prohibit the Town from compelling Hoagland's connection to the sewer system, now or at any point in the future.

[23] First, Hoagland argues that the trial court's grant of summary judgment can be affirmed based on the statute of limitations. It points to a public notice given to Hoagland, telling it to connect to the sewer system by December 1, 2004. Appellant's App. p. 668. When municipalities are attempting to judicially enforce an ordinance, such an action must be brought within two years of the alleged conduct. Ind. Code § 36-1-6-3; 34-28-5-1.

[24] We do not find this argument persuasive: Hoagland's violation of the municipal ordinance has occurred every day since he was ordered to connect to the sewer system, and is occurring right now. It is well settled that right now is within the two-year statute of limitations.

[25] Second, Hoagland argues that all of the Town's claims in the present suit should be barred under Indiana Trial Rule 13(A) as unpled compulsory counterclaims. It argues that the Town was fully aware of its claim against Hoagland for not connecting to the sewers when it filed its answer in the inverse condemnation case on August 4, 2005. Hoagland says that both cases arose from the same transaction or occurrence, that the present claim was mature within the time of pleading, that there were no third parties over whom the trial

court lacked jurisdiction, and that the initial claim has been reduced to judgment. *Estate of McCullough*, 492 N.E.2d 1093, 1095-96 (Ind. Ct. App. 1986).

[26] A counterclaim is only compulsory where it arises from the same aggregate set of operative facts as the opposing party's claim. *Hilliard v. Jacobs*, 927 N.E.2d 393, 401 (Ind. Ct. App. 2010). Here, the only commonality between the two cases is that they involve sewers. We retain the hope that most of these situations can be resolved without resorting to litigation, and we hesitate to encourage municipalities to sue their residents so that their claims will not be barred later. Hoagland's argument is unavailing.

[27] Third, Hoagland argues that several of the Town's statements and representations resulted in the waiver of its claims. It points to an August 2001 letter in which the Town stated, "If your easement is not signed by October 1, 2001, your property will be excluded from the Initial Project." Appellant's App. p. 623. Hoagland also points to several letters in which the Town described the eminent domain process. Hoagland argues that by not exercising its powers of eminent domain long ago, the Town "excluded" him from the project and cannot now compel him to join.

[28] Hoagland neglected to quote the very next sentence in the Town's August 2001 letter: "In the future you will be required to connect to the wastewater system at your own expense . . . ." *Id.* The Town's representations were fairly straightforward; Hoagland could choose to join the sewer system from its initiation or be required to join later. We find no waiver.

[29] Finally, Hoagland argues that the amended penalties ordinance, CLC § 51.99, was not properly passed and therefore cannot be enforced. The ordinance bears a date of April 13, 2009, but was not published in a local newspaper until May 21, 2009, past the thirty-day limit set by statute. Ind. Code § 36-5-2-10; Ind. Code § 5-3-1-2(h). Further, Hoagland argues that the language in CLC § 51.99(B)(1), "when legally required to do so," is ambiguous and vague, such that it would be an unconstitutional basis for punishment.

[30] The Town highlights the testimony of the Clerk-Treasurer, who stated that while the ordinance has April 13, 2009, written on it, this was a scrivener's error. Appellant's App. p. 1425-26. There is a wealth of other evidence indicating that, in fact, the ordinance was passed, after several readings, on May 11, 2009, which renders the May 21, 2009, publication timely. There are notations on the ordinance regarding the readings of the ordinance, town council minutes, and a notice of a public hearing in the local paper, all of which show a publication date of May 11 rather than April 13. *Id.* Finally, we find that the phrase, "when legally required to do so," has an obvious meaning when combined with the previous sentence regarding "the town . . . compel[ling] connection by any property producing sewage or similar waste to the sewer system . . . ." CLC § 51.99(B). The Town's penalty ordinance was properly promulgated.

[31] In short, none of Hoagland's arguments regarding the statute of limitations, compulsory counterclaims, waiver, or invalidity of the Town's ordinances are

availing. None render summary judgment in Hoagland's favor appropriate or partial summary judgment in the Town's favor inappropriate.[5]

## III. Future Proceedings

[32] Because the trial court ruled in Hoagland's favor, it never reached the issue of penalties, which will need to be determined on remand. While the issue is not squarely before us, we would be remiss if we did not make a few comments.

[33] Although the Town is authorized by statute to establish and enforce penalties against those refusing to connect to its sewer system, this authority is not unlimited; the Town is only authorized to establish "*reasonable* penalties for failure to make a connection . . . ." I.C. § 36-9-23-30(c) (emphasis added). Any penalty set above a *reasonable* amount is unauthorized, unlawful, and unenforceable. Because the issue is not before us, we cannot rule on what penalty would qualify as "reasonable," but we have little difficulty saying that a penalty of $2.9 million is nowhere near it. Such a penalty is confiscatory, most likely unconstitutional, and will not be countenanced.

[34] We would also like to express our sincere hope that the parties can work together more amicably to achieve what is clearly the end result: at some point,

---

[5] Hoagland requests that we award it damages and attorney fees under Indiana Appellate Rule 66. We are always hesitant to grant such a request, lest we chill the exercise of litigants' right of appeal. We are even more hesitant where the claim is made against the winning side—Hoagland's request is denied.

after some procedure, Hoagland *will* connect to the Town's sanitary sewer through a Town-provided grinder pump.

[35] This type of litigation tends to clog up the court system. Our courts are not flush with resources, and they are prone to getting backed up. When the system gets backed up, it produces unnecessary and unhealthy strains, which makes it more difficult for parties to obtain relief. And when these cases cannot be discharged, it is impossible for our court system to stay regular—and that means taxpayer resources down the drain. We can understand that, after such a long process, the parties are not overflowing with goodwill. But we hope that, before the case stalls and stagnates, they can put this big mess behind them.

[36] The judgment of the trial court is reversed and remanded with instructions to award partial summary judgment to the Town and for further proceedings consistent with this opinion.

Mathias, J., and Pyle, J., concur.