

FILED

Aug 28 2019, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

Jonathan O. Cress
Cress Law Group PC
Angola, Indiana

ATTORNEYS FOR APPELLEE

Jeffrey P. Smith
David K. Hawk
Hawk, Haynie, Kammeyer &
Smith, LLP
Fort Wayne, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hoagland Family Limited Partnership,<br>*Appellant-Defendant,*<br><br>v.<br><br>Town of Clear Lake,<br>*Appellee-Plaintiff* | August 28, 2019<br><br>Court of Appeals Case No.<br>18A-PL-2088<br><br>Appeal from the Steuben Circuit Court<br><br>The Honorable Allen N. Wheat, Judge<br><br>Trial Court Cause No.<br>76C01-1006-PL-425 |

**Baker, Judge.**

[1] This long-running litigation has clogged the court system for nearly a decade. It has been a conduit for a buildup of bile between the parties and has amassed a commodious volume of attorney fees. It is long since time to plunge this dispute from the judicial pipeline, and in resolving this appeal, we order both parties to move on in good faith as they finally eliminate this waste of everyone's resources.

[2] Hoagland Family Limited Partnership (Hoagland) appeals from several of the trial court's orders entered in favor of the Town of Clear Lake (the Town). First, Hoagland argues that the trial court erred by ordering it to pay penalties for Hoagland's failure to connect its properties to the Town's sewer lines. Second, Hoagland argues that the trial court applied the wrong ordinance to the sewer connection process. Third, Hoagland argues that the trial court erred by ordering it to pay the Town's attorney fees. Finally, Hoagland argues that the trial court erred by denying its request for a discovery sanction against the Town.

[3] We agree with Hoagland on its first three arguments and disagree on its fourth. Therefore, we affirm in part, reverse in part, and remand with instructions to vacate the erroneous orders and for further proceedings.

# Facts

### *The First Appeal*

[4] This litigation has been here before, when this Court described the underlying facts as follows:

Hoagland owns three parcels of real estate ("the properties") located in the Town. Although the Town operates a sanitary sewer system, Hoagland's properties are not connected to it and contain their own septic systems. Each of the properties are within 300 feet of the Town's sewers. In May 2001, as the Town prepared to install its sewer system, it requested an easement for each of the properties so that it could connect them to the sewer system, but Hoagland declined the request.

In 2003, the Town passed the following ordinance:

> The owners of all houses, buildings or properties used for human occupancy, employment, recreation or other purposes situated within the town and which [sic] the property line is within 300 feet of the sanitary sewer is [sic] required at his or her expense to install suitable toilet facilities therein and to connect such facilities directly with the proper sewer in accordance with the provisions of this chapter.

Clear Lake, Ind., Code of Ordinances § 51.51(A). The Town also adopted an ordinance mandating that "[n]o authorized person shall uncover, make any connections with or opening into, use, alter, or disturb any public sewer or appurtenance thereto without first obtaining a written permit from the Town Council." *Id.* at § 51.52(A)(1). "[T]he owner or his or her agent shall make application on a special form furnished by the town. The permit applications shall be supplemented by any plans, specifications, or other information considered pertinent in the judgment of the Inspector." *Id.* at § 51.52(A)(2).

In April 2005, after the Town had installed its system, Hoagland filed an action alleging that the Town had inversely condemned its land by running a sewer main under Hoagland's property.

This suit ended in October 2010 with a settlement between the parties.

Eight months after Hoagland filed the complaint against the Town, the Town passed a Resolution directing the Town's attorney to take legal action against several residents who had not connected to the sewer system; Hoagland's three properties were on the list.

In May 2009, the Town amended its penalty ordinance. Whereas the penalty for violation of a Town ordinance had been set at a minimum of $100 and a maximum of $1000, the new penalty for failure to connect to the sewer system was $500, per day, per property, with no express limit. CLC § 51.99(B).

On January 12, 2010, the Town gave Hoagland notice that Hoagland must connect the properties to the Town's sewer system within ninety days:

> you are hereby given notice that the Town of Clear Lake will proceed to compel connection of the above described properties to the Town of Clear Lake sewer system unless all of said properties are connected to the sewer system within ninety (90) days. You are further given notice that any use of privies, cesspools, septic tanks, or similar structures must be discontinued within ninety days (90) from today. Failure to connect to the Clear Lake sewer system within ninety (90) days may subject the Hoagland Family Limited Partnership to fines, court costs and attorney fees as allowed by Indiana Code and the Town of Clear Lake Ordinances.

Appellant's Supp. App. p. 68. This letter also informed Hoagland that since it had been "benefit[ting]" from the sewer

system to which its properties were not yet connected, the Town was also demanding immediate payment of $4,537.38 in back charges for each property, or a total of $13,612.14.

After Hoagland did not take any action, the Town filed a complaint in which it asked for an order requiring connection, sewer charges that Hoagland allegedly should have been paying plus a further ten percent penalty pursuant to local ordinance, $500 per property per day for each day Hoagland remained unconnected, an order requiring the discontinuance of any private septic systems, and attorney fees and costs. In its answer, Hoagland argued that the Town's claims were barred because they were compulsory counterclaims that should have been asserted during the previous litigation involving inverse condemnation, that the Town's notice to connect was defective, and that the sewer system was generally illegal.

After competing motions for summary judgment and hearings on those motions, on May 4, 2016, the trial court granted summary judgment to Hoagland and denied it to the Town. The Town stipulated that Hoagland cannot complete a connection to the sewer system without the presence of grinder pumps, that the Town has not installed any grinder pumps through which Hoagland could connect to the sewers, and that the Town had not commenced any eminent domain proceedings to put grinder pumps on Hoagland's property. The trial court noted that the Town's claimed penalties had exceeded $2.9 million by the time of the last hearing. It ruled that Hoagland's compelled connection with the Town's sewer system would involve a taking of land and that, under Article One, Section 21 of the Indiana Constitution, the Town could not proceed until it had assessed and tendered just compensation to Hoagland.

*Town of Clear Lake v. Hoagland Family Ltd. P'ship*, 75 N.E.3d 1081, 1083-85 (Ind. Ct. App. 2017) (internal footnote and some citations omitted) ("First Appeal"), *trans. denied*.

[5] The Town appealed. This Court noted that the properties cannot be connected to the Town's sewer system without one or more grinder pumps, which would be installed, owned, and operated by the Town. The dispute, therefore, centered on whether the Town or Hoagland had to act first—in other words, did Hoagland have to apply for a permit to connect to the sewer system before the Town installed the grinder pump(s), or vice versa? *Id.* at 1085. We acknowledged that both parties had "defensible interpretations" of the relevant statutes and ordinances. *Id.* at 1086. Ultimately, we found that Hoagland had the obligation to act first, based largely on the fact that Hoagland knows its own properties better than the Town and could "propose the most cost-effective method of extending the lateral lines," with the understanding that the Town would "accommodate Hoagland by placing the grinder pump where Hoagland deems most convenient." *Id.* at 1087.

[6] We also acknowledged an argument made by Hoagland:

> Hoagland argues that the Town is attempting to find an end run around the requirement to pay just compensation for a governmental taking of property. We do not find this argument persuasive. To be clear, Hoagland was perfectly within its rights to reject the Town's request to voluntarily donate an easement on which to place the grinder pumps. Nor is Hoagland required to accept any offer of compensation the Town may put forth for an easement on its property. Hoagland has the right to force the

Town to initiate eminent domain proceedings, through which a court with the aid of assessors will ensure that the Town pays just compensation for the physical occupation of the grinder pump on the property.

*Id.* This Court ultimately reversed, finding that partial summary judgment should have been awarded to the Town on its demand for an order that Hoagland begin the process of connecting to the Town's sewer lines.

[7] Although the issue of penalties for Hoagland's failure to connect within ninety days of receiving notice that it was required to do so was not squarely before us, we addressed it nonetheless:

> Although the Town is authorized by statute to establish and enforce penalties against those refusing to connect to its sewer system, this authority is not unlimited; the Town is only authorized to establish "*reasonable* penalties for failure to make a connection. . . ." I.C. § 36-9-23-30(c) (emphasis added). Any penalty set above a *reasonable* amount is unauthorized, unlawful, and unenforceable. Because the issue is not before us, we cannot rule on what penalty would qualify as "reasonable," but we have little difficulty saying that a penalty of $2.9 million is nowhere near it. Such a penalty is confiscatory, most likely unconstitutional, and will not be countenanced.

*Id.* at 1089.

### On Remand

[8] Things did not go smoothly on remand. In September 2017, the Town adopted revamped sewer ordinances creating new standards, specifications, and costs. Under the prior ordinance, Hoagland would have had to pay an aggregate

amount of $600 to connect to the Town's sewers; under the new ordinance, the cost skyrocketed to an aggregate amount of $23,400.

[9] The First Appeal was certified on October 18, 2017. Forty days later, on November 29, 2017, Hoagland filed permit applications for sewer connection on each of its three properties and requested eminent domain proceedings. Hoagland applied under the prior ordinance, as it maintained that given the years of litigation regarding its obligations, its sewer connection should not be subject to the newer, costlier ordinance. On that same date, the Town filed a petition for an award of attorney fees.

[10] On December 4, 2017, the Town Council met to discuss Hoagland's applications. It noted that the applications did not comply with the new ordinance. The Town Council voted to issue connection permits to Hoagland conditioned on its compliance with the new ordinance, including the payment of all fees ($7,800 per property or $23,400 in total). Additionally, it discussed Hoagland's request that the Town initiate eminent domain proceedings. After "consider[ing] the lengthy litigation involving Hoagland and the costs associated with pursuing eminent domain (including the potential that it might be required to pay Hoagland's legal fees in such a lawsuit)," the Town Council decided not to initiate eminent domain proceedings for easements over Hoagland's properties. Appellee's Br. p. 13. Instead, it decided "to install

grinder pump stations and appurtenances in rights-of-way and/or existing utility easements as permitted by [the relevant ordinance]." *Id.*[1]

[11]     The Town filed its response to Hoagland's applications with the trial court on December 5, 2017, asking that the trial court order Hoagland to connect in compliance with the new ordinance. The trial court agreed, ordering that Hoagland's applications must be in full compliance with the new ordinance, including the payment of all fees required. The trial court also agreed that the Town was not required to initiate eminent domain proceedings.

[12]     On March 16, 2018, the trial court held a hearing on the amount of penalties to be paid by Hoagland as well as the Town's attorney fee request. Following that hearing, the trial court entered judgment in favor of the Town, ordering that Hoagland pay penalties in the amount of $74,550[2] for its failure to connect to the Town's sewers between April 13, 2010, and November 29, 2017, and attorney fees in the amount of $292,031.75.

[13]     Hoagland filed a motion to correct error. The trial court reconsidered, deciding that it should not have penalized Hoagland for time spent litigating a justifiable claim before the First Appeal was decided. Therefore, the trial court

---

[1] There is evidence in the record that, while grinder pumps cost approximately $4400 apiece, using the public roadways would increase the cost to approximately $50,000. Tr. Vol. III p. 29. At oral argument, counsel for the Town indicated that the Town would foot the bill rather than Hoagland. But that cost will ultimately be passed onto Hoagland, as well as all other taxpayers in the Town.

[2] The trial court reduced the daily penalty from $500, as stated in the ordinance and disapproved of by this Court in the First Appeal, to $10 per parcel, totaling $30 per day.

recalculated penalties only for the period between April 7, 2017, when the First Appeal was originally decided, and April 24, 2018, when the order requiring Hoagland to pay penalties in the amount of $74,500 was entered. The trial court found that the penalties owed by Hoagland totaled $11,490. It also awarded post-judgment attorney fees to the Town, for a total award of $351,857.75. Hoagland now appeals, and the Town cross-appeals.

## Discussion and Decision

[14] Hoagland raises the following arguments: (1) the trial court erred by ordering it to pay any penalties, given that it filed its applications to connect within forty days of the certification of the First Appeal; (2) the trial court erred by ordering that Hoagland's sewer connections are subject to the newer, costlier ordinance; (3) the trial court erred by ordering it to pay the Town's attorney fees; and (4) the trial court erred by refusing to order the Town to pay a penalty for its alleged discovery violations.[3]

[15] We apply a de novo standard of review to questions of law, including the interpretation of ordinances and statutes. *City of Indianapolis v. Campbell*, 792 N.E.2d 620, 623-24 (Ind. Ct. App. 2003).

---

[3] The Town cross-appeals, arguing that the trial court erred by reducing Hoagland's penalty to $10 per day. Given that we find that Hoagland has to pay no penalties, we necessarily find against the Town on its cross-appeal.

# I. Penalties for Failure to Connect

[16]  Indiana Code section 36-9-23-30 provides that "a municipality that operates sewage works . . . may require . . . connection to its sewer system of any property producing sewage or similar waste," and that the municipality "may establish, enforce, and collect reasonable penalties for failure to make a connection under this section." The statute requires that the municipality notify the property owner of the connection requirement at least ninety days before the connection date. *Id.* at -30(b)(2). Pursuant to this statute, the Town enacted an ordinance providing that "the penalty for failure to connect to the sewer system when legally required to do so shall be $500. Each day that a property fails to become connected when legally required to do so shall constitute a separate offense." Clear Lake Ordinance § 51.99(B).

[17]  In this case, the relevant timeline is as follows:

- In May 2001, the Town told residents that sewers would be built and that the Town needed easements because each home required a grinder pump and lateral lines to connect. Owners declining to donate an easement could request that a "Y" be installed in the public right-of-way for later connection.
- Hoagland opted not to donate an easement to the Town and instead asked the Town to install a "Y" in the main sewer line.
- In January 2010, the Town gave Hoagland notice that it must connect its properties to the Town's sewer system within ninety days. At that time, no "Y" had been installed and the Town had not instituted eminent domain proceedings; therefore, there was no way for Hoagland to connect to the sewer system.

- After Hoagland failed to apply for sewer connection permits within ninety days, in June 2010, the Town filed a lawsuit seeking a court order. Litigation ensued, ending with the First Appeal.
- On October 18, 2017, this Court's decision in the First Appeal was certified after our Supreme Court denied transfer.
- On November 29, 2017, Hoagland applied for sewer connection permits.

To date, no "Y" has been installed and the Town has not begun eminent domain proceedings.

[18] To determine whether Hoagland must pay a penalty for failure to connect to the sewer system, we must determine when it became legally required to do so. At the outset of the discussion between Hoagland and the Town, the Town represented that it would either install a "Y" in the main sewer line to enable Hoagland to undertake to connect its properties to the Town's sewers or initiate eminent domain proceedings. Hoagland reasonably relied on these representations. When the Town decided to file a lawsuit rather than take one of those actions, many years of litigation ensued. In the First Appeal, while we ultimately found in favor of the Town, concluding that Hoagland was required to act first, this Court noted that both parties had "defensible interpretations" of the relevant statutes and ordinances. *Town of Clear Lake*, 75 N.E.3d at 1086.

[19] In other words, it was not obvious that Hoagland was legally required to act first, by applying for sewer connection permits, until after the First Appeal. Under these circumstances, the penalty timeline set forth in the ordinance was not triggered until the First Appeal was certified. And within forty days of the certification of the First Appeal—far less than the ninety days contemplated by

the ordinance—Hoagland did, indeed, apply for the permits. Consequently, it was erroneous to order that Hoagland pay any penalty for a failure to connect when legally required to do so, and we reverse that portion of the trial court's order.

## II. Which Ordinances Apply?

[20]  The Clear Lake ordinance in place at the time the Town filed its lawsuit in June 2010 required that property owners pay a total of $200 per parcel of property for connection costs and did not require the owners to pay for the grinder pump(s). Tr. Ex. Vol. I p. 239. In September 2017, after the Town won the First Appeal (but before it was certified), the Town amended the ordinance governing cost of sewer connection. The amended ordinance now requires that property owners must pay approximately $7,800 per parcel of property for connection costs. Clear Lake Ordinance § 51.51. The ordinance does not state that it applies retroactively.

[21]  Hoagland argues that the ordinance in place at the time the Town made its original connection demand and/or at the time the Town filed the lawsuit should apply. We agree. The lawsuit began because Hoagland declined to gift an easement to the Town, which this Court acknowledged Hoagland was well within its rights to do, *Town of Clear Lake*, 75 N.E.3d at 1086, and the Town declined to install a "Y" in the public right-of-way, leaving Hoagland with no way to connect. Forcing Hoagland to pay the higher connection costs now in place is effectively punishing it for its refusal to gift an easement to the Town,

which is bad public policy. *See Steuben Lakes Reg'l Water Dist. v. Tucker*, 904 N.E.2d 718, 722 (Ind. Ct. App. 2009) (holding that property owner may not be forced to pay higher sewer connection fees after refusing to donate an easement in the location desired by the municipality). Therefore, we find that the trial court erred by holding that Hoagland's applications must be made pursuant to the newly amended ordinances.

## III. Attorney Fees

[22] Indiana Code section 36-9-23-30(d) provides that a "municipality may apply to the circuit or superior court for the county in which it is located for an order to require a connection under this section. The court shall assess the cost of the action and reasonable attorney's fees of the municipality against the property owner in such an action." In other words, if a landowner refuses to connect to the public sewer system, thereby requiring the municipality to seek redress in the courts, the municipality is entitled to the cost of the action and its reasonable attorney fees.

[23] Here, we cannot conclude that Hoagland has refused to connect. It refused to gift an easement to the Town, but it was always willing to undertake the connection process on its own, once the Town installed a "Y" connector to the existing sewer lines. Alternatively, it was willing to allow the Town to install a grinder pump on its land and connect in that way—once Hoagland was fairly compensated for the easement. Under these circumstances, we find that the

attorney fees statute does not apply. Therefore, the trial court erred by ordering that Hoagland pay the Town's attorney fees.

## IV. Discovery Violations

[24] Finally, Hoagland argues that the trial court erred in denying its request for discovery fines against the Town totaling $181,900. According to Hoagland, on February 26, 2013, the trial court assessed a penalty against the Town for $100 per day beginning on March 23, 2018, for failing to comply with discovery requests. Hoagland argues that the Town failed to comply in two respects: first, by failing to provide an unaltered copy of Penalty Ordinance 2009-02 until 2015 and second, by failing to provide itemized attorney fee billing statements in response to Hoagland's request for production of documents.

[25] We disagree. The February 26, 2013, order required the Town to "respond to all discovery requests which have heretofore been put forth by [Hoagland] to [the Town] on or before March 22, 2013," providing that a $100 daily penalty would be assessed if the Town failed to timely respond. Appellant's App. Vol. II p. 230. The Town served supplemental responses to all of Hoagland's discovery requests on March 22, 2013. The trial court never found those supplemental responses to be deficient, nor did Hoagland challenge the sufficiency of the responses until the Town filed its petition for attorney fees nearly five years later.

[26] No discovery requests specifically asked for attorney fee billing statements, nor would it have made any sense to produce them until a final judgment was

entered. The Town timely produced the attorney fee affidavits and billing statements when it actually filed the petitions for attorney fees, which was all that was required.

[27] And with respect to the unaltered copy of the ordinance, Hoagland fails to explain "that the 'unaltered' copy was actually a copy of the ordinance that contained a scrivener's error which incorrectly indicated that the ordinance had been passed on April 13, 2009.[4] Because it was not the correct copy of the ordinance, it was not produced in discovery responses." Appellee's Br. p. 55. When the Town discovered the mistake, it designated an affidavit explaining the scrivener's error and produced records from Town Council meetings verifying the explanation.[5] Under these circumstances, the Town was not required to provide the erroneous version of the ordinance to Hoagland, and even if it was, Hoagland was not prejudiced by its absence. Therefore, we find no error with respect to the trial court's denial of Hoagland's request for discovery sanctions against the Town.

# IV.  Conclusion

[28] At oral argument, counsel for the Town explained that for connection to finally occur, there is a process that must be followed. That process is triggered by the

---

[4] The ordinance was actually passed on May 11, 2009.

[5] Indeed, in the First Appeal, this Court found that it was a scrivener's error and that there was "a wealth of other evidence" indicating that the ordinance was passed on May 11, 2009. *Town of Clear Lake*, 75 N.E.3d at 1088.

landowner—Hoagland—filing an application for connection permits. That step has been taken.[6] On remand, we order that both parties proceed in good faith through that process so that this issue can finally be laid to rest.[7]

[29] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to vacate the orders requiring Hoagland to pay penalties and attorney fees and to apply under the new ordinances, and for further proceedings.

Riley, J., and Pyle, J., concur.

---

[6] Counsel for the Town indicated at oral argument that the application filed by Hoagland was problematic because it was made using outdated forms and filed only with the trial court rather than the Town Council. But during the hearing before the trial court, the Town agreed to accept those applications (though it disagreed with the grinder pump locations selected by Hoagland and argued that Hoagland was required to pay the higher fees associated with the new ordinances). Tr. Vol. II p. 124.

[7] We decline to address Hoagland's argument that the Town is required to institute eminent domain proceedings. It is for the Town to decide the most prudent way to proceed, keeping in mind the best interests of its taxpayers, whether it be installation of a "Y," institution of eminent domain proceedings, or installation of the grinder pumps in the public right of way. We strongly encourage both parties to be reasonable in reaching a resolution on this issue.